## THE AGGI.

(Circuit Court of Appeals, Second Circuit. January 4, 1901.)

No. 9.

**1. SHIPPING—CARGO DAMAGE—SEAWORTHINESS.**

A cargo of sugar was damaged on a voyage from Java to Boston by sea water which entered around loosened bolts securing in place a wooden scroll work under the ship's figurehead, and extending some feet from the prow on either side of the vessel. These bolts extended through the ship's plates, being fastened by nuts on the inside, and were in such position that water entering through the holes would readily flow into the fore peak, where the sugar damaged was stowed. The action of the seas upon the scroll work, especially in rough weather and when the ship was heavily laden, would naturally tend to gradually loosen the nuts on such bolts. The bolts had not been inspected for two years, and there was no evidence showing whether or not the nuts were loose at the beginning of the voyage, except the testimony of the officers that there was no leakage on the previous voyage. On the voyage the ship was heavily laden and encountered some heavy weather, but not more than should have reasonably been anticipated. *Held* that, if the bolts were loose at the inception of the voyage, the ship was in that respect unseaworthy, from the consequences of which the owners were not relieved from liability by the provisions of the Harter act, and that the evidence was not sufficient to overcome the presumption of fault which arises against the carrier when goods are damaged during their transportation.

**2. SAME—EXCEPTIONS IN BILLS OF LADING.**

A provision of a bill of lading that the ship is not to be answerable for loss through any "latent defect in the machinery or hull not resulting from want of due diligence by the owners" does not cover a condition of unseaworthiness existing at the commencement of the voyage, but applies only to a state of unseaworthiness arising during the voyage.

Appeal from the District Court of the United States for the Eastern District of New York.

J. Parker Kirlin, for appellant.

Walter F. Taylor, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The sugar of the libelants while being transported by the steamship on a voyage from Java to Boston was injured by the inflow of sea water. The sugar was in bags, and was stowed in the main peak of the vessel. The water entered around the bolts fastening the scroll work of the figurehead on the bow of the vessel. This scroll work extended 12 or 15 feet backward from the stem on each side of the bow, was of wood varying in thickness from 2 to 4 inches, and was secured by a row of iron bolts which passed through it and through the iron plates of the vessel into a compartment of the main deck, adjoining the forecastle, used for the stowage of the ship's tackle. The row of bolts was somewhat above the main deck. As the vessel was laden for the voyage, the bolts were about 8 feet above the water line. Where the deck plates join the stem of the vessel they did not fit snugly, and small openings existed, which would permit the water to flow from the main deck into the fore peak. When the vessel arrived it was found that five or six of the bolts were sufficiently loose to admit the water to the main deck, and that it had flowed thence into the fore peak and damaged the bags nearest the stem, and accumulated in the bottom and damaged the lower bags.

The voyage occupied 2 months and 12 days, being protracted about a day and a half beyond the usual period by weather which the master characterized as "boisterous and contrary."

The question upon this appeal, as it was in the court below, is whether the injury to the goods was caused by a peril of the seas, or by the insufficiency of the vessel for their safe transportation. The opinion of the court below (93 Fed. 484) contains a full discussion of the evidence, and renders any further discussion of it unnecessary, as we agree generally with the conclusions reached.

The ship stowed the goods where water leaking through the bolt holes would find its way directly to the goods; and, as she was heavily laden for the voyage, the entrance of the water and ensuing damage to the goods if the bolts were loose was a probable consequence and almost inevitable if the weather was bad. It follows that if the bolts were loose at the inception of the voyage the vessel was then unseaworthy. It is contended for the vessel that they were loosened by the heavy weather upon the voyage. This contention rests upon evidence that more or less severe weather was encountered, that there had been no leakage around the bolts upon previous voyages, that the vessel was in an apparently sound and seaworthy condition when she commenced the voyage, and that she had received a general overhauling and inspection some two years before. There is no evidence of a later inspection of the bolts, and none that they received any injury upon the voyage beyond the wear and tear ordinarily incident to a voyage of that character and duration.

In the most favorable view for the appellant, the presumptions authorized by the evidence are as consistent with the conclusion that the bolts were loose at the inception of the voyage as that they

were loosened by any unusual strains to which they were subsequently subjected. We conclude that the appellant has not overcome the prima facie presumption of fault which obtains when goods in the custody of a common carrier for transportation are damaged after their receipt and before their delivery.

It is unnecessary to inquire whether the owners of the vessel did or did not exercise due diligence to make the vessel seaworthy. The provisions of the Harter act do not relax the obligation of the vessel owner to supply a seaworthy vessel,—an obligation importing an absolute warranty that such is her condition at the inception of the voyage. The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181. There are no terms relaxing this obligation in the bill or lading under which the goods were shipped. The provision that the ship is not to be answerable for loss through any "latent defect in the machinery or hull not resulting from want of due diligence by the owners" does not cover a condition of unseaworthiness existing at the commencement of the voyage, but, according to the decisions of the supreme court, applies only to a state of unseaworthiness arising during the voyage. The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644.

The decree is affirmed, with interest and costs.