### THE ITALIA.

(District Court, S. D. New York. June 30, 1910.)

1. SHIPPING (§ 132*)—DAMAGE TO CARGO FROM SEA WATER—LIABILITY OF VESSEL—BURDEN OF PROOF.

   A vessel has the burden of proof to show that damage to her cargo from sea water was caused by perils of the sea and within the exceptions in the bills of lading, and testimony that on the voyage she encountered gales which caused her to roll, and that rivets in her side were found loose on her arrival in port, is not alone sufficient, without showing that reasonable precautions had been taken to prevent the wetting of the cargo, and that the rivets were in place at the beginning of the voyage.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 482; Dec. Dig. § 132.*

   Losses by perils of the sea, see notes to The Dunbritton, 19 C. C. A 465; Southerland-Innes Co. v. Thynas, 64 C. C. A. 118.]

2. SHIPPING (§ 126*)—RESPONSIBILITY FOR GOODS AFTER UNLOADING.

   A consignee of cargo has a reasonable time within which to remove the merchandise from the wharf on which it is unloaded, and during the in-

terim the carrier is bound to exercise reasonable care to protect it from injury from exposure to rain or water; the degree of care depending on the character of the goods.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 461-464; Dec. Dig. § 126.*]

In Admiralty. Suit by Philip W. Saitta against the steamship Italia. Decree for libelant.

Philip S. Saitta, for libelant.

Wing, Putnam & Burlingham (Everett Masten and Robinson Leech, of counsel), for claimants.

HAZEL, District Judge. There are two causes of action set forth in the libel; the first relating to the shipment of 116 boxes of macaroni from the port of Castellamare, Italy, to New York, which admittedly on delivery at the latter port on February 25th, was damaged by sea water. The claimants invoke the protection of the Harter act and of the bill of lading, which in terms exempts the carrier from liability arising from the perils of the sea. There was evidence tending to show that on the arrival of the vessel in New York an examination was made by the superintendent of the claimants and the master of the steamer, which disclosed that a few rivets in the upper beams just below the main deck had worked loose, and that said rivets were rusty and the deck water-stained; that on the previous voyage there had been no leakage or rust, and that the steamer had been duly inspected when in port. By the ship's log (Exhibit A), in evidence, it appears that on February 19, 1908, the Italia encountered a strong south gale. She pitched, and took on water fore and aft. She also shipped water and labored heavily on February 18th and 20th. Accordingly, it is claimed that, by reason of such pitching and straining of the vessel, the sea water got into the merchandise at the place where the rivets had worked loose. Neither the master nor any officer or seaman of the Italia was called as a witness, and whether the riveting was loosened by the straining of the vessel in the gales she encountered and the macaroni was damaged by leakage at that point is conjectural.

The burden of proof was upon the vessel in view of the delivery of the merchandise in bad condition to show that the damage was actually caused by sea perils, and not through the carelessness and want of precaution of the vessel, or of those in charge of her navigation. The Folmira, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546. The testimony that the vessel on her voyage encountered gales causing her to roll and that the rivets were found loose is not thought sufficient standing alone to prove that the injury was caused by sea perils. The vessel was bound under the doctrine of the hereinabove cited case to show affirmatively that reasonable precaution had been taken to prevent sea water from wetting the cargo. Some evidence was given, it is true, to indicate that the Italia had been regularly inspected in port, but as to the character of the inspection, whether it was made with reasonable care, or whether the rivets were fastened in

place at the beginning of the voyage, the evidence is silent. I think, therefore, that it is not satisfactorily shown that the vessel was fitted to carry the macaroni at the beginning of the voyage without injury from sea water which in inclement weather was likely to roll over her. The Rappahannock, 173 Fed. 829; The Presque Isle, 140 Fed. 202.

The second shipment arrived at the wharf on May 2d, but concededly the unloading of the vessel was not completed until May 6th. The respondent claims that on May 7th during a severe rainstorm in the early morning a leader burst wetting 89 boxes in which the macaroni was contained. It is contended that, pursuant to the terms of the bill of lading, the responsibility of the vessel immediately ceased on unloading the cargo. The testimony is in conflict as to the date when the cargo was placed on the inclosed pier, but, in view of the claim of the respondent that the wetting was on the 7th day of May within 24 hours after the unloading was completed, the exact date is not of controlling importance. Under the terms of the bill of lading, it is unquestionably the law that the consignee had a reasonable time within which to remove the merchandise from the dock where it was unloaded (Liverpool & Great Western Steam Co. v. Suitter et al., 17 Fed. 695), and during the interim the carrier was bound as bailee or warehouseman to exercise reasonable care to protect the merchandise and to keep it from being injured by exposure to rain or water (The Titania, 124 Fed. 975). The libelant has shown by fair preponderance of the evidence that the shipment was not properly protected, in that it was placed under a leader which leaked. While ordinarily it would not be negligence to so place goods in warehouse, yet as the commodity, as is generally known, was easily damaged or spoiled by moisture, I think additional care should have been taken to protect it.

The evidence shows that on the first shipment libelant's damages amounted to $162.40, and upon the second to $669.45, and in the aggregate to $831.85. A decree may be entered for said amount, with interest and costs.