## THE GOVERNOR POWERS.

### (District Court, D. Massachusetts. July 6, 1917.)

### No. 1467.

1. SHIPPING ☞209(3)—DAMAGE TO CARGO—EXEMPTION BY HARTER ACT—BURDEN OF PROOF.

To entitle a shipowner to the exemption from liability for damage to cargo resulting from faults or errors in navigation or management of the vessel, given by Harter Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 (Comp. St. 1916, § 8031), he has the burden of proving affirmatively that the vessel was seaworthy at the beginning of the voyage, or that due diligence had been used to make her so.

2. SHIPPING ☞209(3)—DAMAGE TO CARGO—PERILS OF THE SEA—BURDEN OF PROOF.

Where cargo received in good condition and to be delivered in like good condition, dangers of the sea excepted, is damaged on the voyage, the burden is on the carrier to show by clear evidence that the damage was within the exception, and proof that it was caused by seawater is not alone sufficient.

3. SHIPPING ☞209(3)—DAMAGE TO CARGO—PERILS OF THE SEA.

Whether damage to a cargo was caused by a peril of the sea, within the exception in the bills of lading, is a question of fact, to be determined upon the circumstances of each case, and depending upon whether a seaworthy ship, properly trimmed and with the cargo properly stowed, would ordinarily go through such seas without material injury to its cargo.

4. SHIPPING ☞141(3)—LIABILITY FOR DAMAGE TO CARGO—DANGERS OF THE SEA.

The sugar cargo of a schooner was damaged by sea water on a voyage from Cuban ports to Boston in March. During two days the vessel encountered a high wind, probably not exceeding 60 miles an hour, which was not unusual at that season. She was hove to, and there was some straining; but she lost no sails, and was apparently not thought in danger. There was evidence that the cargo was not properly dunnaged. *Held*, that such facts did not exonerate her from liability under a clause of the bill of lading excepting dangers of the sea.

In Admiralty. Suit by the American Sugar Refining Company against the schooner Governor Powers. Decree for libelant.

Carter, Ledyard & Milburn, of New York City, and G. Philip Wardner, of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

HALE, District Judge. This is a libel against the schooner Governor Powers for breach of contract to carry safely a cargo of sugar to Boston from Trinidad and Cienfuegos, Cuba.

[1] The case shows that the cargo was duly shipped on board the schooner under bills of lading providing for the delivery of the goods at Boston, subject to the exception of being relieved from liability by "dangers of the sea"; the cargo was delivered at Boston, damaged by sea water. The answer alleges that the injury occurred through dangers of the sea; that the schooner encountered a gale, which caused

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

her seams to open and wet the sugar. The answer also sets up an alternative defense under the Harter Act, that the damage resulted from faults or errors in the navigation or management of the schooner. The relief afforded by section 3 of the Harter Act, 27 Stat. 445, to shipowners is purely statutory; in order for a shipowner to avail himself of the exemption from liability for errors in management, the burden is on him to prove affirmatively that the vessel was seaworthy at the beginning of the voyage, or that due diligence had been used to make her so. The Wildcroft, 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794; Jamison v. N. Y. & P. S. S. Co. (D. C.) 241 Fed. 389.

It is not necessary, however, to consider this aspect of the case. The principal contention cuts deeper; it arises upon the question whether the claimants have met the burden of establishing that the storm, encountered upon the voyage, constituted a "danger of the sea." The libelant contends that the damage resulted, not from perils of the sea, but from the unseaworthy condition of the vessel in respect to weakness of construction, lack of proper pumps, stoppage of limbers, leaky condition of pipes, and insufficient dunnage. The testimony on behalf of the ship shows that upon this voyage she encountered bad weather for two days, March 3d and March 4th. It is contended that this gale constituted a "danger of the sea." The captain says it was a "young hurricane"; the wind blew 90 to 100 miles an hour; that he reefed the sails and hove to: that he had the fore, main, and mizzen sails up, with one reef during the breeze, and three of the schooner's five head sails up, during the entire time the vessel was "hove to"; that, during the first day of the storm, he went twice into the 'tween-decks hold, and the lower hold, and crawled around on top of the sugar; in the 'tween-decks hold he went, on top of the sugar, from the lazaret to the after end of the after hatch, some 25 or 30 feet, and there was just enough space for him to squeeze through; that during the second day he went into both holds and crawled on the sugar; that in the lower hold, although there was more space above the sugar than in the 'tween-decks hold, he crawled only about 5 feet from the forward bulkhead aft; that, during the gale, he found 20 to 23 inches of water in the wells; that the water ran down on the sugar from the top deck; that he tried to stop the water from running down, by putting oakum in the seams.

There is testimony on the part of the crew that it was the worst storm any of them had experienced. The mate Pinkham gives these extracts from the ship's log:

"March 3d. This day came in with strong wind; took in all light sails and left others 8 a. m. 8:30 wind came from nothwest in rain squalls. 10 a. m. heavy sea. N. W. gale. Vessel laboring heavy, and shipping heavy seas; day ends same; cloudy; pumps well tended."

"Saturday, fourth day of March. This day came in with heavy n. west gale, rough sea, vessel shipping seas and laboring heavy. Lat. 31° 53' N. Long. 78° 53' W. Moderating some. P. m., rough sea; clear; vessel laboring heavy under short sail; pumps, lights, and lookout attended."

He says the storm was something very unusual; much out of the ordinary of anything he ever saw "coming up the latitude there in the

winter time"; that it was a gale from 80 to 100 miles an hour. He testified, further, however, that on the previous voyage, in the autumn of 1915, from Turks Island to Boston, with a cargo of salt, he had two sails blown away, the foresail and spanker; "but the weather was not as bad as on this voyage." His log entry on the former voyage shows as follows:

"October 30, 1915. This day came in clear; fresh N. W. wind. Reefed spanker 8 a. m., and took in light sails; fresh north gale. Noon, reefed fore and mizzen sails; hove vessel to port tack, lost foresail. 8 p. m., rough sea; put vessel before sea; 9 p. m., heading to southward."

"November 1, 1915. This day came in clear; fresh N. W. wind. Set all sail. Heading to northward. A. M. 12:30 noon, blowing gale. W. S. W.; took in spanker; reefed fore, main, and mizzen sails. Very rough sea; kept vessel off before sea carried away spanker. Bent riding sail in place of same."

The evidence on the part of the libelant shows that the gale was the ordinary gale which occurs many times during the winter or spring on the Northern Atlantic coast. The official observations of the Weather Bureau along the Atlantic coast show, on March 3 and 4, 1916, prevailing winds of moderate to gale force, along the coast as far northward as Hatteras; that the lowest barometric pressure was 29.7 on the 3d, and 29.5 on the 4th; that, in the area in the vicinity of the Governor Powers, there was an ordinary gale of a force often occurring long the Atlantic coast during the winter months; that the maximum velocity of the wind was not over 60 miles an hour. Testimony is offered, also, of other ships along the Atlantic coast, anywhere from 80 to 150 miles away from the Governor Powers. It is shown that these ships encountered a gale which did not exceed 60 miles an hour, and that the gale was not an unusual one, but such as often occurred during the winter months. The most convincing evidence touching the character of the gale is found, however, in the testimony coming from those upon the Governor Powers, showing what happened on board the ship during the storm. To this testimony I have already referred. It appears that the vessel hove to, during the storm; that she labored, strained, and opened seams around the three deckhouses and the waterways; and that a leak was found on the starboard side of the vessel below the water line, but none of her sails were carried away, although the ship was "hove to." And it appears that, during the autumn storm, a few months before, the ship had lost her foresail, and was put before the sea, while during the storm in question it was not found necessary to let her run before the wind, but, though hove to no sails were carried away. Although the mate says that the March storm was worse than the storm in the autumn, the entries in his log utterly fail to sustain this testimony. The log makes no allusion to the captain's visits to the hold, or any damage to the cargo, or any trouble found with one of the ship's pumps, although these facts are in testimony. The log does not show what sails were taken in and reefed during the rough weather encountered on the voyage in question, although, on the previous voyage in the autumn, shortening of the sails is shown, as well as the fact that the vessel was put before the wind There is nothing in the log to show that the vessel on the 3d and 4th

of March experienced unusually severe weather. She clearly did not experience so severe weather as on the voyage in the autumn previous. The captain refers to the storm as a "young hurricane"; but he inadvertently speaks of it throughout his testimony as a "breeze," and Pinkham, the mate, alludes to it as a "heavy squall." If it had been of great severity, the captain could hardly have made his excursions into the crowded hold, where he "could scarcely squeeze through."

[2] In The Folmina, 212 U. S. 354, 361, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, it was held that when goods, received in good order on board a vessel under a bill of lading agreeing to deliver them at termination of the voyage in like good order and condition, are damaged on the voyage, the burden is on the carrier to show that the damage was occasioned by a peril for which he was not responsible. Proving that damage to cargo was caused by sea water does not establish that such damage was caused by a peril of the sea, within the exception of the bill of lading. To relieve the ship from liability, the testimony must be clear. Clark v. Barnwell, 12 How. 272, 13 L. Ed. 985; The G. R. Booth, 171 U. S. 450, 19 Sup. Ct. 9, 43 L. Ed. 234; The Henry B. Hyde, 90 Fed. 114, 116, 32 C. C. A. 534; The Lennox (D. C.) 90 Fed. 308, 309.

[3] The case of The Frey, 106 Fed. 319, 45 C. C. A. 309, has been called to my attention. In that case the Court of Appeals of the Second Circuit found that whether under any circumstances the excessive violence of the sea constitutes a "peril of the sea," within the exception of the bills of lading, is a question of fact, to be determined upon the circumstances of each case, depending upon whether a seaworthy ship, properly trimmed, and with the cargo properly stowed, would ordinarily go through such seas without material injury to its cargo. The Newport News (D. C.) 199 Fed. 968; The Babin Chevaye, 208 Fed. 966, 126 C. C. A. 54.

In The Rappahannock, 184 Fed. 291, 107 C. C. A. 74, the case shows that the steamship encountered three severe gales in which the velocity of the wind was shown to be about 60 miles an hour; that much damage was done on deck by the waves, doors and windows were broken, fenders were carried away, and butts were started. In speaking for the Circuit Court of Appeals of the Second Circuit, Judge Lacombe says:

"The evidence showed that the Rappahannock, on this trip, encountered three severe gales. * * * The captain and mate estimated the wind velocity at 60 miles an hour. They encountered heavy seas, sometimes quartering; but in the fall of the year such gales and seas are not infrequently encountered on the lakes, as the captain himself admitted. * * * It was not supposed by any of the officers or crew of the steamer that her seaworthiness was extraordinarily tried, although, of course, she labored and strained in the gales she encountered. There was no thought of the vessel foundering or going ashore. * * * The conclusion is that the Rappahannock encountered conditions of wind and sea which were not unusual at that season of the year. Seaworthiness imports ability to meet such conditions. * * * In our opinion the claimant does not sustain the burden of proving that the leak resulted from a 'danger of navigation' within the exception of the bill of lading." The Aggi, 107 Fed. 300, 46 C. C. A. 276; The Italia (D. C.) 184 Fed. 366; The Medea, 179 Fed. 781, 103 C. C. A. 273; The Westminster, 127 Fed. 680, 62 C. C. A. 406.

[4] In the case at bar the whole testimony, taken together, particularly the evidence of what happened on the ship itself during the storm, is persuasive that the captain and crew of the schooner have greatly exaggerated the severity of the gale. From the proofs I cannot believe that the wind velocity was greater than 60 miles an hour. There was no evidence that any fears were entertained as to the safety of the ship. There is no necessity for discussing the testimony in detail. On the whole, the evidence does not meet the burden of proving that the damage came from "dangers of the sea." On the other hand, it rather tends to show that there was some straining of the ship in the storm; that her limbers were clogged; that the cargo was not properly dunnaged, but that, at the bilges, the cargo was substantially next to the ceiling; that there was no dunnage where dunnage is most required in a sailing vessel, which is, for a great part of the time, heeled over from one side to the other, so that much of the water will collect in her bilges. Such fault of dunnage was commented upon by Judge Choate in The Sloga, Fed. Cas. No. 12,955.

I am of the opinion that the facts in this case do not meet the test applied by Judge Wallace, in The Frey, supra.

Much testimony has been offered touching the construction of the vessel. It is not necessary, however, to express an opinion touching this question. In view of my finding that the schooner has not met the burden of showing that the loss was occasioned by dangers of the sea, it is not necessary to discuss, further than I have already done, the elements of unseaworthiness to which my attention has been called.

A decree may be entered for the libelant. Henry E. Warner, Esq., of Boston, is appointed assessor, to pass upon the damages and report to the court.

The libelant recovers costs.