### THE CHARLES ROHDE.

(District Court, D. Maryland. November 7, 1925.)

1. **Shipping ⊙=141(4)—Shipowner failing to use diligence to make vessel seaworthy is liable, though damage results from peril of sea.**

Exception relieving shipowner from liability for damages resulting to cargo from perils of sea is of no avail, if due diligence to make vessel seaworthy is not exercised.

2. **Shipping ⊙=123—Vessel adopting injurious method of stowage held liable, notwithstanding general custom.**

General custom will not justify method of stowage which is clearly injurious, and *held,* vessel loading wheat on ceiling of hold without dunnage during March, when high winds, which would cause vessel to blow her water, might be expected, was liable, notwithstanding prevailing custom to load in such manner.

3. **Customs and Usages ⊙=14—Prevailing usage involving negligent stowage held not part of contract of carriage by implication.**

Prevailing usage involving negligent stowage *held* not implied in contract of carriage, in view of its repugnancy to express provision that exception relating to perils of sea should not apply unless owner had exercised due diligence to make vessel seaworthy.

In Admiralty. Libel by F. A. Hax and J. B. William Hax, copartners trading as G. A. Hax & Co., against the schooner Charles Rohde. Decree for libelant.

Lord & Whip, of Baltimore, Md., for libelant.

Emory, Beeuwkes & Skeen, of Baltimore, Md., for respondent.

SOPER, District Judge. The libelants, as owners of a cargo of wheat, shipped on the schooner Charles Rohde, bring this libel in rem against her for damage to a portion of the cargo in the course of a voyage from Baltimore to West Point, Va. The injury to the cargo is admitted, but the suit is defended on the ground that the damage is within the exceptions in the bill of lading. That document was informal in character, but was issued subject to all the conditions of a standard form of bill of lading, and the parties have stipulated that the clause relevant to this controversy is that which declares that the vessel shall not be liable for loss or damage occasioned by perils of the sea, provided that the owners have exercised due diligence to make the vessel seaworthy.

The vessel was loaded in Baltimore on March 19, 1925, receiving the grain from the elevator in bulk directly upon the ceiling of the hold, without the use of dunnage. She left Baltimore on the morning of March 20, and met with fine weather until about midnight. Thereafter until 10 a. m. on March 22 she was subjected to a high wind or gale and to the action of heavy seas. The rough weather was first encountered when the vessel was off Windmill Point, near the mouth of the Rappahannock river. The weather report from Cape Henry shows that at 1 a. m. on March 21, the wind had a velocity of 46 miles an hour; at 2 a. m., 42 miles an hour; after 2 a. m. the wind was under 40 miles an hour, and was accompanied by sleet, rain, and snow. Between 2 p. m. on March 21, and 3 a. m. on March 22, the wind was more than 40 miles an hour, reaching a maximum of 47 miles an hour. After 3 a. m. on March 22, the wind was under 40 miles an hour. For the 24 hours of March 21, the average velocity of the wind was 34 miles an hour, and on March 22, 23 miles an hour. For some 16 hours prior to 10 a. m. on March 22, the vessel was obliged to anchor, because the wind worked holes in the mainsail, which was four or five years old, and finally blew it away. While she was at anchor, and prior thereto, she pitched and rolled in the heavy seas. There was no damage to the hull of the vessel, nor any leak. At no time was there more water in the hold than is necessarily found in wooden vessels at all times when afloat. The damage to the grain was not caused by any catastrophe or extraordinary condition, but was due to the fact that when the vessel rolled in the heavy seas, she blew her water; that is to say, the water in the hold was thrown violently back and forth and forced through the crevices in the ceiling and came in contact with the cargo.

The question arises whether this injury may be ascribed to perils of the sea, within the exception in the bill of lading. The respondent finds the phrase "perils of the sea" defined to his liking in the case of The Newport News (D. C.) 199 F. 968, in which

Judge Hough said: "In order to find peril of the sea, the losses sustained need not be extraordinary, in the sense of necessarily arising from uncommon causes. Rough seas are common incidents of a voyage, yet they are certainly sea perils, and damages arising from them are within the exception if there has been no want of reasonable care and skill in fitting out the ship and in managing her. Carver (4th Ed.) § 87." But as shown by Carver, and the decisions of the courts, the loss must be of an accidental character which could not be foreseen as one of the ordinary consequences of the voyage; and Judge Hough has also said that "the peril which forms a good exception in a bill of lading means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety." The Rosalia (C. C. A.) 264 F. 285. See, also, Texas & Gulf S. S. Co. v. Parker (C. C. A.) 263 F. 864. Weather as severe as that described in the case at bar was discussed in The Governor Powers (D. C.) 243 F. 961; The Maumee (D. C.) 260 F. 862; The Charlton Hall (D. C.) 285 F. 640; The Erskine M. Phelps (D. C.) 231 F. 767. And in each case it was decided that the exception did not apply.

[1] But irrespective of the weather, the exception is of no avail if the owners fail to exercise due diligence to make the vessel seaworthy. The respondent insists that the Rohde was seaworthy and fit to carry the cargo, because the wheat was stowed in accordance with the usage prevailing at the port of Baltimore. A number of experienced seamen testified that in vessels of the class of the Rohde, it is usual at Baltimore to receive grain in bulk upon the ceiling without the use of dunnage. While the evidence shows instances in which dunnage was used, the prevalence of the custom contended for may be taken as proved for the purposes of this case. The same witnesses said that if dunnage is not used, and a vessel like the Rohde encounters rough seas produced by high winds or gales, she will blow her water, and the cargo will be wet. With equal unanimity they also testified that in the month of March one would expect to encounter, in a voyage from Baltimore to West Point, high winds or gales and rough seas. It is therefore clearly established that one who transported wheat in bulk without dunnage in a schooner like the Rohde, on such a voyage, at such a time, might reasonably expect the cargo to be damaged upon its arrival.

[2] Nevertheless the respondent contends that the vessel is released from all liability because she complied with the custom and stowed the cargo in the usual manner. Reliance is placed upon the decision of Judge Brown in The Titania (D. C.) 19 F. 101, and upon Hostetter v. Park, 137 U. S. 30, 11 S. Ct. 1, 34 L. Ed. 568. See, also, St. Johns N. F. Shipping Corporation v. S. A. Companhia General Commercial, etc., 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201. The usage of a particular trade may authorize stowage in a special manner, and ordinarily the obligations of the ship will be complied with if the usage is observed. But even a general custom will not justify a method of stowage which is clearly injurious. It was held in The Indrapura, 190 F. 711, at page 714, 112 C. C. A. 354, that "while it is proper to consider evidence of the usual custom * * * and the usual method of construction of ships and their appliances, such evidence is not necessarily conclusive. It may be rejected altogether where the construction is obviously defective." Again in The Lake Fontanet (C. C. A.) 288 F. 544, it was said: "If under the circumstances the manner of stowing and dunnaging adopted was faulty and negligent, the existence of a custom so to do was not a good excuse. What ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."

[3] Nor may it be said that the usage became by implication a term of the contract of carriage so as to free the carrier from liability. The bill of lading declares that the exceptions of perils of the sea shall apply, provided the owners have exercised due diligence to make the vessel seaworthy. In view of this express proviso, a usage involving negligent stowage is so repugnant to the contract that it cannot prevail. Tilley v. County of Cook, 103 U. S. 155, 162, 26 L. Ed. 374.

The vessel must be held liable for the injury to the cargo.