## DAVISON CHEMICAL CO. v. EASTERN TRANSP. CO. et al.

### THE VINCENT McNALLY.

District Court, D. Maryland.    December 8, 1927.

No. 1422.

Forrest E. Single, of New York City, and Coleman, Fell, Morgan & Brune, of Baltimore, Md., for libelant.

Samuel K. Dennis, of Baltimore, Md., for respondents.

SOPER, District Judge. The evidence in this case indicates quite clearly that the damage to the cargo of the barge Vincent McNally was caused by water which came through the hatches, and that the hatch coverings suffered injury through stress of weather. The libelant nevertheless contends that the vessel is responsible for the damages, because in its opinion there was no such peril of the sea as would excuse her. The libelant emphasizes three points in which it claims that the vessel was at fault.

1. It is said that the vessel was too heavily laden for a voyage on the Chesapeake Bay in the fall of the year. There were five barges in tow of the tug Britannia, of which the Vincent McNally was the first. This barge, and the next one in line, were loaded as is the custom for similar craft on the Chesapeake Bay during the fall and winter months; that is to say, she was not loaded to her capacity. The remaining three barges, having come through the Delaware Canal, had even less cargo. The only testimony in the case that the Vincent McNally was loaded too heavily was that of the surveyor, Christie, who testified on behalf of the libelant. He indicated that in his opinion the barge did not have sufficient free board when he examined her after she had gone through the stress of the storm, and when the boat, still laden with wet fertilizer, lay deeper in the water than when she began the voyage. This is the only testimony on the point, and it is, in my opinion, insufficient to prove that the boat was improperly laden when she left Baltimore.

2. The libelant contends that the tug Britannia was inadequate for a tow of five barges on the Chesapeake Bay. The testimony shows that in fact the tug was obliged to cut loose three of the barges before she was able to take refuge from the storm in the Rappahannock river. When the storm broke, the flotilla was some miles north of Wind Mill Point, bound for Norfolk. The weather had been quite calm and clear. Suddenly the wind shifted to the north or northwest, and, blowing with great violence, reached a velocity between 40 and 50 miles an hour in the judgment of those on board. This is probably a correct estimate, since the official weather report at Norfolk indicates the velocity at that point of some 36 miles, while the weather report at Cape Henry shows a velocity of approximately 50 miles at midnight. In order to safeguard the tow, the tug changed its course and headed for Wind Mill Point, arriving some two hours later. Then for a period estimated at an hour's duration, the tug endeavored to carry the tow into the Rappahannock river, but the change in course brought the flotilla head on into the wind. The tug was unable to make headway,

and finally was obliged to cut loose the last three barges, as all of the vessels were in danger of being carried out to sea. When this was done, the tug was able to proceed, but it was not until 4 a. m. that the two barges, including the Vincent McNally, were beached in a place of safety.

The libelant says that the damages to the hatches of the Vincent McNally must have occurred during the period when the tug was unable to make headway. The evidence, in my opinion, does not justify this conclusion. When she changed her course at 9 p. m., she had the wind slightly abaft the beam until she reached Wind Mill Point. All of the witnesses agree that during this period the storm was at its height. The decks were awash and those on board the Vincent Mc-Nally were obliged to remain in the pilot house. The storm was still raging during the period between midnight and 4 a. m. when the scow was beached. It is quite impossible to say that the damage would not have occurred if the vessel had not been subjected to the elements for seven hours, but this period had been reduced to six.

3. The libelant relies on testimony tending to show that the hatches were improperly equipped since they were covered only with one tarpaulin instead of two. This testimony was given by the surveyor, Christie, a witness for the libelant, and also by the surveyor, Lietch, a witness for the vessel. Each indicated that in his opinion there should be two tarpaulins covering the hatches on barges in the fall or winter. The evidence shows quite clearly that, while such provision may occasionally be made, the prevailing custom is to use one tarpaulin only. It is pointed out by the libelant that this court has ruled in The Charles Rohde, 8 F.(2d) 506, that a prevailing usage as to stowage of cargo will not relieve a ship if it involves negligence. If it should appear, under the circumstances of the case at bar, that it is negligent to make use of one tarpaulin only on hatches of scows in the Chesapeake Bay in the fall, and that because of such negligence the cargo of the Vincent McNally was injured, the libelant would be entitled to recover. The important question involved is whether the damage to the hatches was occasioned by insufficient covering, or whether, on the other hand, it was due to a peril of the sea. There is testimony on behalf of the ship that the storm in question was exceedingly violent. The master of the tug recorded in his log that it was the worst storm he had ever seen in the Chesapeake Bay. Other witnesses gave similar testimony. On the other hand, there is equally credible testimony which tends to show that while the storm was one of great violence, it was not unprecedented. The fact would seem to be that the storm, however violent, was not so great as not to have been anticipated at this season of the year. On the other hand, there is much testimony to indicate that quite unusual and unexpected damages were received by the vessel. Portions of the superstructure, which were securely fastened to the deck, were carried away. Steps leading to the wheel house, water casks, and a substantial cover over the engine were either carried away entirely or loosened from their fastenings. Moreover, the hatch coverings themselves received injuries which are conceded to be unusual. Strong backs on top of the hatch coverings were broken; battens on the sides of the hatch coverings were torn off, and in one instance a ring bolt was loosened from its socket. The water found its way into the hold between the hatch combings and the broken battens. The testimony shows that the tarpaulins were in good condition, and that the barge generally had been recently overhauled and repaired, where repairs seemed to be necessary. Can it be fairly said that had there been two tarpaulins on each hatch, instead of one, the damages to the hatch coverings would not have occurred? I think not. Surveyor Lietch testified that unless the sections of the hatch underneath a single tarpaulin are perfectly level with each other, and without openings in between, the canvas will sag down into the openings and let in the water when seas break over the vessel, and that the hatches on the Vincent McNally, while in serviceable condition, were not exactly a tight or smooth fit. He also said that two tarpaulins should be used, not only to keep the water from seeping through the single canvas, but to make a better battening down on the sides of the hatch combings. Nevertheless neither he nor Christie, the surveyor for the libelant, vouchsafed the opinion that the unusual damages to the hatches would not have occurred if two tarpaulins had been used on this occasion. Whatever may be the weight to be accorded to expert opinion as opposed to well-nigh universal custom to the contrary, it should not control in this case when it appears that in any event the cargo would have been injured.

There is this distinction between the case at bar and the case of The Charles Rohde, that in the latter it was admitted than any rolling of the ship in a high wind or gale was likely to cause the damage to the cargo in

the absence of sheathing in the hold of the vessel. There is no testimony in the record in the case at bar to suggest that the re-enforcement of the hatch coverings used on the Vincent McNally was liable to be torn away in the manner shown by the evidence in any weather likely to be encountered. The gale was doubtless no greater in intensity than other storms which have occurred upon the Chesapeake Bay, and yet, as a result of the combined fury of wind and wave, injuries occurred that could not have been foreseen. I am satisfied that the element of catastrophe was present in the situation, against which ordinary care was of no avail.

The libel should be dismissed.