## THE TITANIA.

### (District Court, S. D. New York. July 2, 1903.)

1. SHIPPING—FAILURE TO DELIVER GOODS—BILLS OF LADING AS EVIDENCE OF RECEIPT.

   Bills of lading issued by the master of a ship are prima facie evidence that the goods therein described were received on board, and the burden rests on the carrier to prove the contrary by clear evidence, to avoid liability for a failure to deliver in accordance with the bills.

2. SAME—RESPONSIBILITY OF CARRIER FOR GOODS AFTER UNLOADING.

   After the delivery of goods on a wharf, notice to the consignee, and a reasonable time thereafter for the consignee to take the goods away, the carrier is not under the strict liability of a carrier, but is charged with liability as a warehouseman or bailee, and with the duty of exercising reasonable care and attention to prevent loss or injury to the goods.

In Admiralty. Action for failure to deliver cargo.

E. N. & T. M. Taft, for libelants.

Convers & Kirlin, for claimant.

HOLT, District Judge. This action was brought to recover $1,286.22, the value of 56 bales of hemp. The libelants are assignees of three bills of lading issued on December 1, 1902, by the master of the steamship Titania, then lying at Manila, each for 500 bales of hemp, acknowledged to have been shipped in good order and condition upon the steamship. These 1,500 bales were a portion of a shipment of about 7,000 bales by W. F. Stevenson & Co., libelants' assignors, and of a cargo of about 19,000 bales shipped on the steamship upon that voyage. Each of the bills of lading on the margin described by particular marks the particular bales covered by the bill. On the arrival of the ship at New York, 1,444 bales were delivered to the libelants; the rest have not been delivered. There is no satisfactory evidence as to what has become of the 56 bales. There is no evidence that they were not shipped at Manila. There is some evidence, of an unsatisfactory kind, that the total number of bales supposed to be in the cargo was not shipped at Manila, but there is no evidence that any

¶ 2. See Carriers, vol. 9, Cent. Dig. § 610½.

of the particular 1,500 bales, with the particular marks described on the margin of the bills of lading held by the libelants, were not shipped at Manila. The evidence shows that all the bales which were put in the ship at Manila were in the ship when she arrived at New York; but if the total number of bales called for by the bills of lading was shipped at Manila and arrived at New York, there is no evidence of what has become of the missing bales. The marks on the bales were placed sometimes on tags fastened to the bales, and sometimes on the bales themselves, and some of the marks, in the course of the shipment, or after the bales were landed on the wharf at New York, became obliterated, and some of the bales which were delivered were bales having no marks, but which were accepted as a good delivery, because their general appearance and quality was similar to those retaining the proper marks. Under these circumstances, in my opinion, the evidence contained in the bills of lading that the steamship received the 1,500 bales owned by the libelants is controlling. The bills of lading are prima facie evidence that the goods were on board. Nelson v. Woodruff, 1 Black, 156, 17 L. Ed. 97. If the carrier claims that they were not in fact received, the burden of proof is upon him to show that fact by clear evidence. No such evidence having been given in this case, it must be assumed that they were received on board. The carrier thereupon became an absolute insurer for their safe carriage and delivery. The claimant claims that they were delivered on the wharf, and that their loss was due to the delay of the libelants in taking them away. It is true that a carrier does not remain under the very strict liability of a carrier after a delivery on the wharf, notice to the consignees, and a reasonable time for the consignees to take the goods away; but the carrier, after such time, is not justified in failing to exercise reasonable care for the preservation and protection of the goods. He is no longer charged with the strict liability of a carrier, but he is charged with the liability of a warehouseman or bailee, having the duty of exercising reasonable care and attention to prevent loss or injury to the goods. But in this case there is no evidence to show that the goods were not lost before a reasonable time had elapsed for the consignees to take them away, or that they were not afterwards lost under circumstances for which the carrier might be responsible. The most plausible supposition seems to me to be that there was a shortage of 56 bales in the original shipment, and that all the other consignees received the full amount called for by their bills of lading, and that these consignees did not; but that supposition is a mere guess. So far as the evidence stands, the only evidence in the case is that contained in the receipt in the bills of lading, and that binds the ship until it shows by equally cogent proof either that the bills of lading were false, or that it has delivered the goods.

My conclusion is that there should be a decree for the libelants, as demanded in the libel, with interest and costs.