## THE TITANIA.

(Circuit Court of Appeals, Second Circuit. June 23, 1904.)

### No. 196.

1. SHIPPING—BILL OF LADING AS EVIDENCE OF RECEIPT.

   A bill of lading issued by the master of a ship is prima facie evidence of, and, in the absence of proof to the contrary, establishes, the receipt on board of the goods therein described.

2. SAME—CONSTRUCTIVE DELIVERY.

   To establish a constructive delivery by a ship of goods deposited on the wharf, it is necessary for the carrier to show that he separated the goods from the general bulk of the cargo, designated them, and gave due notice to the consignees of the time and place of their deposit, and a reasonable time for their removal.

3. SAME—CONTRACT.

   The question of the duty of the carrier to deliver goods carried is to be determined by the bill of lading, without regard to the charter party, of which the shipper had no notice till after the terms of his contract with the ship had been unalterably fixed.

4. SAME—WAIVER.

   Any right of the carrier under the contract to compel consignees to take goods shipped "from alongside" is waived by the carrier unloading the goods onto the dock.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 124 Fed. 975.

Appeal by claimant from a decree of the District Court for the Southern District of New York in favor of the libelants for $1,412.93

¶ 2. See Shipping, vol. 44, Cent. Dig. § 426.

damages for failure to deliver 56 bales of hemp. The opinion of the District Court is reported in 124 Fed. 975.

J. Parker Kirlin and Charles R. Hickox, for appellant.
Theodore M. Taft, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. We agree with the District Judge in holding that, in the absence of any proof to the contrary, the bills of lading sufficiently establish the receipt of the bales in controversy on board the ship at Manila. These bills duly acknowledged the receipt in good order of 1,500 bales of hemp as numbered and marked on the margins "to be delivered in the like good order and condition at the aforesaid port of New York." The libelants have never received the 56 bales which are in dispute in this action. The law applicable to such a situation is clearly stated by the Supreme Court in The Eddy, 5 Wall. 481, 495, 18 L. Ed. 486, as follows:

"Delivery on the wharf in the case of goods transported by ships is sufficient under our law, if due notice be given to the consignees and the different consignments be properly separated, so as to be open to inspection and conveniently accessible to their respective owners. Where the contract is to carry by water from port to port an actual delivery of the goods into the possession of the owner or consignee, or at his warehouse, is not required in order to discharge the carrier from his liability. He may deliver them on the wharf; but to constitute a valid delivery there the master should give due and reasonable notice to the consignee, so as to afford him a fair opportunity to remove the goods, or put them under proper care and custody. When the goods, after being so discharged and the different consignments properly separated, are not accepted by the consignee or owner of the cargo, the carrier should not leave them exposed on the wharf, but should store them in a place of safety, notifying the consignee or owner that they are so stored, subject to the lien of the ship for the freight and charges, and when he has done so he is no longer liable on his contract of affreightment."

In order to make a valid delivery, which relieves the carrier from liability, it is necessary to show that the goods in question were landed on the wharf, segregated from the general cargo so as to be conveniently accessible to the consignee, that notice was given of their arrival and location and a reasonable time allowed for their removal. Manifestly it is not a good delivery to deposit the entire cargo of the ship on the wharf and inform inquiring owners that if their goods arrived they will be found somewhere in the general mass of merchandise.

There was no actual delivery; this proposition must be conceded. To establish a constructive delivery it was necessary for claimant to show, first, that he separated the libelants' goods from the general bulk of the cargo; second, that he properly designated the goods; third, that he gave due notice to the libelants of the time and place of the delivery. The Ben Adams, 2 Ben. 445, 449, Fed. Cas. No. 1,289. There is no proof sufficient to establish any of these essential conditions to relief from liability. The claimant reaches the conclusion that a proper delivery was made by a process of syllogistic reasoning, which may not unfairly be epitomized as follows: If the missing bales were put on board at Manila they were carried safely to

New York. All of the bales which reached New York were landed on the Staten Island pier and consignees notified. Ergo the missing bales were constructively delivered to libelants. It is this presumption which the claimant seeks to substitute for proof of delivery, actual or constructive, which he is bound to furnish.

The District Judge sums up the situation as follows:

"The only evidence in the case is that contained in the receipt in the bills of lading; and that binds the ship until it shows by equally cogent proof either that the bills of lading were false, or that it has delivered the goods."

The claimant is in the unfortunate predicament of being called upon for proof and offering conjecture in lieu thereof. The claimant's brief concedes that "the disappearance of the bales in suit, if they were ever on the wharf, cannot be absolutely accounted for in any satisfactory manner," and yet upon him the law imposed the duty of accounting for them.

As before stated the bills of lading were prima facie evidence of the receipt of the hemp. We have, however, examined the testimony upon this question sufficiently to conclude that the weight of evidence, irrespective of the bills of lading, tends to show that the goods were actually on board at Manila. So far as the bales in suit are concerned they may have been lost soon after they were placed on the wharf, or they may have been carried away by other cargo owners by mistake. If the record contains any proof that these bales were separated from the rest, libelants notified and an opportunity given them to carry their property away, we have failed to discover it.

The Titania was chartered by her owner to Warner, Barnes & Co., of Manila, November 12, 1902. The charter party was introduced in evidence by the libelants. The twelfth clause is as follows: "The cargo to be brought alongside and taken from alongside at merchant's risk and expense; and to be carefully stowed on board at steamer's expense." The District Judge ruled that the charter party had no bearing on the controversy and that the libelants were not bound by its terms, their contract being shown by the bills of lading. We incline to the opinion that this ruling is correct, the preponderance of evidence being that the libelants had no notice or knowledge of the charter party until after the terms of their contract with the ship had been unalterably fixed. The Pietro G. (D. C.) 39 Fed. 366.

Moreover, assuming notice by libelants of the clause quoted and that it is capable of the interpretation advanced by claimant, it is manifest that no one connected with the discharging of the ship ever asserted such a construction. If the master had the right to compel the libelants to receive the hemp at the end of the ship's tackles he should have so informed them and proposed such a delivery. Instead of doing so he proceeded to unload in a manner which made it impossible for the libelants to comply with the provision of the charter party in question even if they had known of it. The master testifies:

"The arrangement made between the ship and the dock with reference to the unloading of the cargo and the use of the dock for that purpose was that the cargo was to be discharged according to the custom of the port. The custom of the port, as I understand it, is to land the cargo on the wharf and deliver it from there. The ship paid for the use of the wharf for that purpose."

If, then, the claimant acquired any right to compel the libelants to take the hemp "from alongside," he waived the right by delivering from the dock in accordance with the provisions of the bills of lading and the custom of the port.

Although concurring in the foregoing the majority of the court are of the opinion, in which, however, the writer does not concur, that the evidence establishes the following propositions: First, that the 56 bales in controversy were actually placed on the dock and weighed by libelants' agents; and, second, that the ship undertook to deliver into lighters. Concededly these bales were not put into lighters sent to the wharf by the libelants and as the claimant has failed to show a delivery, pursuant to the agreement as aforesaid, the liability of the ship is established.

The decree of the District Court is affirmed with interest and costs.