## SCOTT v. W. R. GRACE & CO.

(Circuit Court of Appeals, Second Circuit. June 15, 1921.)

No. 258.

1. Shipping ⬅132(3)—Vessel must make delivery of goods admitted by bill of lading to have been received.

The master of a ship, when he issues a bill of lading for goods, must make delivery of all the goods admitted by the bill of lading to have been received, and, when a shipowner signs a bill acknowledging the receipt of a specific quantity of goods, he is bound to deliver the full amount specified, unless he can show that the whole or some part of it was in fact not shipped; the burden of establishing a short shipment being on the vessel.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Shipping** ⟜132(3)—Burden on shipowner to show falsification of bill of lading.

If a shipowner seeks to avoid responsibility for goods, admitted by the bill of lading to have been received, by showing falsification of the bill, which he duly signed, he bears the onus.

3. **Evidence** ⟜158(28)—**Shipping** ⟜106—Tally and receipts held best evidence; liability of vessel did not commence until receipt of goods on board.

Where bags of nitrate were loaded on a vessel by lighterage company employed by shipper, the ship's responsibility for the shipment did not commence until the goods were laden on board, and a tally into the ship and receipts given for each lighter was the best evidence of what was actually loaded.

4. **Shipping** ⟜132(5)—Shipowner held to sufficiently prove that goods admitted by bill of lading were not received.

In a proceeding by vessel to recover freight, evidence introduced by libelant *held* sufficient to sustain a finding that all of the goods admitted by the bill of lading to have been received were not received by the vessel.

5. **Appeal and error** ⟜173(1)—Defenses not pleaded below not considered.

A defense not pleaded in the answer, and not relied on below, will not be considered on appeal by defendant.

Appeal from the District Court of the United States for the Southern District of New York.

Libel proceedings by Jewett M. Scott against W. R. Grace & Co. Decree for libelant, and respondent appeals. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter and Theodore M. Hequembourg, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (Oscar R. Houston, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. [1] The appellee contracted to carry a full cargo of nitrate on the barkentine Amazon from Antofagasta, Chile, to Mobile, Ala., U. S. A. The freight was paid by the appellant, except a balance of $10,242.80, payment of which was refused because of alleged short delivery of 1,096 bags of nitrate worth $10,-242.80. It was agreed to carry the full cargo at $25 per gross ton delivered weight. After loading, a bill of lading was given calling for 16,819 bags of nitrate of soda, weighting "Qtls. 35,488.13. Weight and contents unknown. All on board to be delivered." When delivery was made, it was found that there were 15,723 bags of nitrate. The defense is attempted to be supported upon this difference in the number of bags, to wit, 1,096.

The rule is well settled, both in this country and in England, that the master of a ship, when he issues a bill of lading for goods, must make delivery of all the goods admitted by the bill of lading to have been received. When he signs a bill acknowledging the receipt of a specific quantity of goods, the shipowner is bound to deliver the full amount specified. unless he can show that the whole or some part of it was

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in fact not shipped. The burden of establishing a short shipment is upon the vessel, and it is only relieved from this obligation by satisfactory proof. The Titania, 131 Fed. 229, 65 C. C. A. 215; Bolton Steam Shipping Co. v. Crossman (D. C.) 206 Fed. 183; Dowgate S. S. Co. v. Arbuckle (D. C.) 158 Fed. 179; Henry Smith & Co. v. Bedouin Steam Navi. Co., [1896] Appeal Cases H. L. 70; Abrath v. North Eastern Ry. Co., 11 Q. B. D. 440.

[2] If the shipowner seeks to avoid responsibility, by showing falsification of the bill of lading which he duly signed, he bears the onus. Bradley v. Dunipace, 31 L. J. Ex. 210; The Titania, 131 Fed. 229, 65 C. C. A. 215.

[3, 4] It being conceded that there is a difference in the number of bags delivered from that which the bill of lading was issued for, the question presented is: Does the evidence warrant the conclusion below that such burden has been sustained by the shipowner? The proof offered on behalf of the vessel shows that only 15,427 bags were put on board. The first officer took a tally of the bags as they were received on the schooner. Contemporaneous detailed entries were made in the log, and duplicate original receipts were signed by the first officer, and his personal memorandum was made. Both 'the log and this memorandum were received in evidence. It appears that the hatches were not opened until the vessel began to discharge at Mobile. The testimony of the custom officers and the appellee's officers was that the hatches were sealed with the custom seals, and were kept sealed, except during the time of actual discharge. The discharge was made by the stevedores of the appellant. The cargo was for it. The testimony is that all the cargo on the vessel was removed.

The custom officers did not keep a tally of the out-turn of the cargo because it was not dutiable, but a representative of the railway company and a representative of the stevedores kept a tally. Both agreed that 15,723 bags were discharged. While this is in excess of what appears to be the first officer's tally of the number of bags taken aboard, it is explained by the fact that some of the bags broke during the discharge, and there was loose nitrate in the hold, which was gathered up by the stevedores and rebagged. There is nothing in the log which would indicate that any false entries were made. The bags of nitrate were placed in lighters, and towed to the schooner alongside, in an open roadstead where the Amazon was anchored, 1½ or 2 miles off shore. The practice was for the tug to take from one to ten lighters in tow and bring them out to the waiting vessels, leaving two or three lighters for each vessel. The lighters were left tied alongside the ocean vessels, and discharged from the lighter with the vessel's tackle, and the tug then returned to pick up empty lighters and take them back to the beach. The appellant relied upon the tally books produced by it, showing the tally taken when the bags were loaded on the lighters on shore.

The work of lightering the bags to the Amazon was performed by a lighterage company employed by the appellant. Receipts in triplicate showing the number of bags loaded on the lighter when she left shore were given to each lighterman, and then, as each lighter was dis-

charged, the practice was for the first officer to sign one of these receipts and give it to the lighterman, and sign the second and give it to the shipper upon his application, and keep the third for the ship's records. These receipts were in the possession of the appellant, but were not produced. No explanation was made for their nonproduction, nor is evidence offered that they were lost or destroyed. It is possible that some of the bags were lost while on the voyage from the shore to the vessel. The ship's responsibility did not commence until the goods were laden on board, and the tally into the ship and receipts given for each lighter was the best evidence of what was actually loaded. We are satisfied with the conclusion of the District Court below. The evidence fully warrants the claim of the shipowner that he has sustained the burden which he assumed of establishing that he delivered the quantity of nitrate which he received on board in the open roadstead from the lighters.

[5] It is further contended that the appellee cannot maintain this suit, because the charter, by its terms, frees the charterer from all liability immediately upon completion of the loading of the cargo. Clause 15 provides:

"The charterer's liability to cease on completion of cargo. Owners to have a full lien on the cargo for all freight, dead freight, and demurrage under this charter party."

In this way it is sought to escape liability because of the cesser clause in the charter party; but this defense is not pleaded in the answer, and was not relied upon below, and, because it was not pleaded, we will not consider it here.

Decree affirmed.