## THE ROBIN GRAY.

## BLANCHARD LUMBER CO. v. SEAS SHIPPING CO., Inc.

### No. 335.

Circuit Court of Appeals, Second Circuit.

May 1, 1933.

See, also, 65 F.(2d) 376.

Lord, Day & Lord, of New York City (George de Forest Lord, James S. Hemingway, and Woodson D. Scott, all of New York City, of counsel), for appellant.

Baldwin & Barns, of New York City (Frank V. Barns, of New York City, of counsel), for appellee Seas Shipping Co., Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

This libel is for a failure to deliver eight lots of lumber, covered by on-board bills of lading, signed by the vessel's master at the port of departure. The Robin Gray sailed in November, 1926, from Pacific to Atlantic Coast ports, with a cargo of lumber for which the bills of lading were issued and signed by the master in negotiable form, as prescribed by the charter party. The bills of lading recited that the lumber in question had been "Received * * * on board the steamship

'Robin Gray'" to be carried to destination, Boston and New York, where it should be delivered to the order of the Southern Alberta Lumber & Supply Company, the shipper, "notify Blanchard Lumber Co." The appellant opened an irrevocable letter of credit in favor of the Southern Alberta Company, the shipper, who drew against the letter of credit for 90 per cent. of the invoice value of the lumber and forwarded the bills of lading with drafts. These were paid by the bankers, and appellant reimbursed them. Upon such reimbursement, appellant had delivered to it the bills of lading.

When the ship arrived at Boston, it failed to deliver two lots of lumber covered by the bills of lading totaling 42,056 feet, and at New York failed to deliver lots of lumber covered by six bills of lading totaling 171,546 feet. The total cargo of the Robin Gray was 4,711,063 feet. The appellee maintained that the lumber claimed to be short was never loaded. The court found accordingly. But there was no evidence at the trial or testimony of any person who checked either the loading or the delivery.

The bills of lading acknowledging the receipt of the lumber, which was short at delivery, presumptively establish that the goods in question were received by the vessel. The Harter Act § 4, 27 Stat. 445 (46 USCA § 193); The Natal, 14 F.(2d) 382 (C. C. A. 9); Scott v. W. R. Grace & Co., 275 F. 340 (C. C. A. 2); The Ghazee, 172 F. 368 (C. C. A. 2); The Titania, 131 F. 229 (C. C. A. 2). The master's on-board bills of lading were binding upon the vessel when the goods came within the custody of the master. It was the duty of the appellee to establish that the cargo had not come alongside. Sections 8 and 28 of the charter provided that the charterer should deliver the cargo at the port of shipment to within reach of the steamer's tackle. If the cargo was on the pier or in the lighters alongside the vessel and within reach of her tackle as claimed, it came within the master's control and was delivered to the vessel. The ship was then responsible for it, and the contract of carriage commenced. Bulkley v. Naumkeag Steam Cotton Co., 24 How. (65 U. S.) 386, 16 L. Ed. 599; Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364; Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 27 F.(2d) 129 (C. C. A. 2).

The decree should have been entered for the appellant.

Decree reversed.