## AMERICAN TRADING CO., Inc. v. THE HARRY CULBREATH et al.

No. 164, Docket 21891.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1951.

Decided Feb. 15, 1951.

---

Stanley W. Schaefer, New York City, for American Trading Co., Inc.

Alexander & Ash, New York City (Edward Ash and Sidney A. Schwartz, New York City, advocates), for John W. McGrath Corporation.

Haight, Deming Gardner, Poor & Havens, New York City (John C. Moore and Tallman Bissell, New York City, of counsel), for Alcoa S.S. Co., Inc.

Irving H. Saypol, U. S. Atty. (Tompkins, Boal & Tompkins and Arthur M. Boal, New York City, of counsel), for the United States.

To the facts stated in the opinion and findings of the district judge, 95 F.Supp. 312, there should be added the following:

Each of the bills of lading contained a statement of this character:

| Marks and Numbers | Quantity or Number of Pieces or Packages | Description of Goods | Gross Weight Pounds: Kilos |
|---|---|---|---|
| *Shipper State* Mkg/Repacks/Selected Hallawi/AAAAA/66 lbs. | 2137 | Cases Hallawi Dates | |
| DoDoDo/H./AA/Do | 363 | Cases Hallawi Dates | 1,094,386 |
| DoDoDo/H./BBBBB/Do | 2499 et.etc. | Cases Hallawi Dates | |

Title 46 U.S.C.A. § 1303 reads in part:

"(3) After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

"(a) the leading marks necessary for identification of the goods as the same are furnished in writing by the shipper before the loading of such goods starts, provided such marks are stamped or otherwise shown clearly upon the goods if uncovered, or on the cases or coverings in which such goods are contained, in such a manner as should ordinarily remain legible until the end of the voyage.

"(b) Either the number of packages or pieces, or the quantity or weight, as the case may be, as furnished in writing by the shipper.

"(c) The apparent order and condition of the goods: *Provided,* That no carrier, master, or agent of the carrier, shall be bound to state or show in the bill of lading any marks, number, quantity, or weight which he has reasonable ground for suspecting not accurately to represent the goods actually received, or which he has had no reasonable means of checking.

"(4) Such a bill of lading shall be *prima facie* evidence of the receipt by the carrier of the goods as therein described in accordance with paragraphs (3)(a), (b), and (c), of this section; *Provided,* That nothing in this chapter * * * shall be construed as repealing or limiting the application of any part of sections 81–124 of Title 49.

"(5) The shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars. The right of the carrier to such indemnity shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper."

49 U.S.C.A. § 88 reads in part: "In case the carrier refuses or fails to deliver the goods, in compliance with a demand by the consignee or holder so accompanied, the burden shall be upon the carrier to establish the existence of a lawful excuse for such refusal or failure."

49 U.S.C.A. § 100 reads in part: "When goods are loaded by a carrier such carrier shall count the packages of goods, if package freight, and ascertain the kind and quantity if bulk freight, and such carrier shall not, in such cases, insert in the bill of lading or in any notice, receipt, contract, rule, regulation, or tariff, 'Shipper's weight, load, and count,' or other words of like purport, indicating that the goods were loaded by the shipper and the description of them made by him or in case of bulk freight and freight not concealed by packages the description made by him. If so inserted, contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein."

Before CHASE, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

As Gulf Trading Company, the shipper, was the agent of American Trading Co., we do not here have a case where someone other than the shipper in good faith advanced funds in reliance upon bills of lading. The crucial question here, then, is whether the shipper or the carrier made the final check on which rested the statement of the quantities in the bill. The trial judge in his opinion found: "It is quite probable that the individual who operated as checker on the steamship's deck during the loading operation was connected with the stevedores and may be one of their number. It remains a fact nevertheless that both the captain and the mate of the vessel referred to the checker as an employee of the ship's agent. In view of the rest of their depositions this may well be an ignorant statement but it was not contradicted. This checker made out tally sheets that were delivered to the mate who added up the contents of all the sheets without investigation and issued therefor to the ship's agent a receipt for the ship's cargo and it was on this mate's receipts that the bills of lading to the consignees were prepared.

So, as a matter of fact, the ship in accepting the checker's report accepted liability for his count whoever the checker was and certainly the vessel's owner, when its agent issued the bills of lading accepted a heavy responsibility which only a convincing explanation could reduce. 49 U.S.C.A. § 88; 46 U.S.C.A. § 1303(3) and (4). We cannot say that the suspicion of short delivery to the vessel engendered by a process of exclusion of other possible causes of the shortage in delivery to the consignees is sufficiently convincing to overcome the execution and delivery of the bills of lading especially in default of clear evidence of the position and authority of the checker. The suggestion that only the shipper's statement of the number of boxes put aboard was accepted is not borne out by the language of the bills themselves and more definite evidence of actual calculable shortage. Consequently delivery to the ship is found of the quantity stated in the bills of lading and the ship's manifest. Since that quantity was not out-turned or delivered to the libellants their claims are sustained."

The judge also made this formal finding: "The quantity of dates stated in the bills of lading and in the ship's manifest were delivered to the ship for carriage and the failure of outturn was not explained."

 As these findings have sufficient support in the evidence, we accept them as correct. On that basis, the ship must be taken as having been "loaded by the carrier" within the meaning of 49 U.S.C.A. § 100, which is incorporated in the Carriage-of-Goods-by-Sea Act, 46 U.S.C.A. § 1303(4). Reading 49 U.S.C.A. § 100 together with 46 U.S.C.A. § 1303(3)(c), and 46 U.S.C.A. 1303(4), we think that the notation "Shipper State" in the bills should be disregarded, and that § 1303(5) is inapplicable. Accordingly, under 49 U.S.C.A. § 88,[1] the ship had the heavy burden of establishing the "existence of a lawful ex-

cuse" for its failure to deliver the goods in the quantities stated in the bills.

 To discharge this burden, it was necessary for the ship to show that there could have been no loss of libellant's goods after the ship docked at the end of the voyage.[2] The trial judge found that this was not shown. We think this finding not "clearly erroneous."

 The judge also found that neither the dock-owner, Alcoa, nor the stevedore, McGrath, were in any way liable, since they had each exercised due care. These findings we also accept as adequately supported by the evidence. It might be argued that, if the dock-owner and stevedore exercised due care, no loss could have occurred after the ship docked. But this does not follow. For there may have been dishonesty, in disposing of the goods, which escaped the vigilance of Alcoa and McGrath, despite their exercise of due care.[3]

Affirmed.

---

1. Also incorporated in the Carriage-of-Goods-by-Sea Act, 49 U.S.C.A. § 1303(4).

2. The Titania, D.C., 124 F. 975, 976, affirmed 2 Cir., 131 F. 229, 230–231; Bolton Steam Shipping Co. v. Crossman, D.C., 206 F. 183, 184; Smith & Co. v. Bedouin Steam Navigation Co., [1896]

A.C. 70; Cf. James v. Standard Oil Co., D.C., 189 F. 719, 720, affirmed 2 Cir., 191 F. 827.

3. See The Ella Pierce Thurlow, D.C., 300 F. 103, 105–106, affirmed Drisko v. Barber S. S. Lines, Inc., 2 Cir., 300 F. 106.