AUSTRIAN UNION S. S. CO. OF TRIESTE, AUSTRIA, et al.
v. CALAFIORE et al.

(Circuit Court of Appeals, Fifth Circuit.    February 13, 1912.)

No. 2,234.

SHIPPING (§ 125*)—LIABILITY FOR INJURY TO CARGO—CONSTRUCTION OF BILL OF LADING.

A provision in bills of lading giving the ship the right to call at any ports before or after proceeding to the port of destination "in any order, backwards or forwards, for the purpose of receiving and for delivering coals, cargo or passengers, or for any other purpose; and all such ports, places and sailings shall be deemed within the intended voyage"—must be construed with reference to the voyage contemplated by the ship-owner and shipper at the time the bill of lading was issued, and be restricted in allowing deviation to the business and necessities of the ship pertaining to that voyage. And where the bill of lading was for carriage of a cargo of lemons from Italy to New Orleans, such provision gave the ship no right to stop at Tampa, Fla., several days to take on cargo for a succeeding voyage before proceeding to New Orleans, and such stopping rendered her liable for damages resulting to the fruit from such delay.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 459, 460, 466; Dec. Dig. § 125.*]

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Suit in admiralty by Salvatore Calafiore and others against the Austrian Union Steamship Company, of Trieste, Austria, and others. Decree for libelants, and claimants appeal.    Affirmed.

This proceeding was commenced by a libel in rem filed on behalf of Salvatore Calafiore against the Austrian steamship called the Gerty. In that libel it was alleged, in substance, that in May, 1909, certain named persons shipped by the Gerty from Palermo, Italy, for New Orleans, certain boxes of lemons, receiving therefor bills of lading to their own order, which were thereafter indorsed to Calafiore. The bill of lading was attached. The libel alleged that the ship arrived at New Orleans about June 16, 1909, with the lemons in a badly damaged condition.

The causes of the damage are alleged as follows: That it was the duty of the master to proceed directly to New Orleans; that, instead of doing so, the master, while upon said voyage to the port of New Orleans with said steamship, wrongfully diverted it to the port of Tampa, Fla., where the ship was detained over six days in tropical heat loading phosphate, which, the evidence shows, was for return cargo after full discharge at New Orleans; that the lemons were damaged thereby by hot weather, and "Said ship had no means of ventilation, except by opening the hatches and by the usual ventilators upon such ships"; and that the lemons, in addition to the damages from heat, were damaged by "the dust from phosphate" laden at Tampa. Intervening libels were filed for other merchants, making substantially the same allegations.

Claim was duly filed by the Austrian Union Steamship Company, of Trieste, Austria (appellant), and bond given, and the ship was released on such bond. Exceptions were then filed to the libel and intervening libels on the ground that they stated no cause of action. These exceptions were overruled, and the company then filed its answers to the libel and intervening libels. These answers admitted the shipments and the voyage and the stop at Tampa; averred that the ship was properly equipped, manned, etc.; averred that the damages were greatly exaggerated, and demanded full proof; averred that during the delay at Tampa the market price of lemons rose to an extent suf-

ficient to offset the actual damages to physical condition; and finally claimed that, if any loss or damage occurred, it was "simply due to the unavoidable circumstances and conditions of a voyage which the shippers agreed by their bills of lading should be made, in consideration to the advantages to themselves given by such contracts."

In support of this position the defendant referred to the following clause to be found in the bills of lading:

"Shipped in apparent good order and conditioned by ——— in and upon the Austrian steamship called the *Gerty*, whereof ——— is master for the present voyage, or whoever else may go as master in the said ship, now lying in the port of Palermo, and *bound for New Orleans but with liberty*, either before or after proceeding towards that port, to proceed to and stay at, any ports or places whatsoever (although in a direction contrary to, or out of, or beyond, the route to said port of dischárge), once or oftener, in any order, backwards or forwards, for the purpose of receiving and for delivering coals, cargo or passengers, or for any other purpose; *and all such ports, places and sailings shall* be deemed within the intended voyage."

The lower court found against the ship on the ground that the clause in question was invalid as covering the visit to Tampa. The matter of damages was referred to a commissioner, who reported his findings, on which a decree in favor of libelants and interveners was rendered. From that decree an appeal by claimant and its surety was taken.

George Denegre, J. P. Blair, and Victor Leovy, for appellants.

J. D. Rouse, Wm. Grant, and W. B. Grant, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). "The first thing which is always settled between a shipowner and a shipper of goods is the voyage." Lord Esher, in Margretson v. Glynn, 1 L. R. (Q. B. Div. 1892).

The reservation in the bill of lading on which the claimant relies to relieve itself from liability for delay and detention at Tampa must be construed with reference to the voyage in contemplation of the shipowner and the shippers at the time the bill of lading was issued, and therefore be restricted in allowing deviation to the business and necessities of the ship pertaining to that voyage. See Swift v. Furness, Withy & Co. (D. C.) 87 Fed. 345; Liverpool Steamship Co. v. Phœnix Ins. Co., 129 U. S. 441, 9 Sup. Ct. 469, 32 L. Ed. 788; Pacific Coast Co. v. Yukon Independent Transport Co., 155 Fed. 35, 83 C. C. A. 625; Leduc v. Wood, 20 Q. B. D. 482; Glynn v. Margretson (Appeal Cases) L. R. 1893, p. 355.

In all the cases cited, stress is laid upon the voyage in contemplation, and in Scrutton on Charter Parties (Ed. 1910) 235, note, it is said:

"All these clauses must be construed in the light of the commercial adventure undertaken by the shipowner. Thus, a clause giving leave 'to call at any ports' will only allow a shipowner to call at ports which will be passed in the ordinary course of the named voyage in their geographical order; the words 'in any order' will allow the shipowner to depart from geographic order; but, even when there are general words giving liberty to call at ports outside the geographic voyage, these will be cut down by the special description of the voyage undertaken *to ports in the course of that voyage*." (The underscoring is mine.)

The voyage in this particular case, as stated in the bill of lading, was from Palermo to New Orleans. Tampa was a port near to the

route and to be passed in the voyage contemplated. Under the reservation in the bill of lading, the ship probably had a right to stop at that port "for the purpose of receiving or delivering coals, cargo or passengers or for any other purpose," all in case the same was proper and necessary to that voyage. See Amsinck v. Insurance Co., 129 Mass. 185, 186. The ship did stop at Tampa, not for the purposes of the voyage, but for the purpose of another voyage to be undertaken after New Orleans should be reached. This stoppage and the delay resulting was unquestionably beyond the contemplation of the shippers at the time the bill of lading was signed. Such delay and detention undoubtedly caused the damage the lemons suffered through heat and lack of ventilation, and some of the damage to the boxes of lemons was undoubtedly caused by phosphate dust resulting from loading phosphate.

The method of ascertaining the damages in the court below was by taking the evidence with regard to a quasi arbitration, in which both the ship and the shippers were represented, and which resulted in an estimate of 75 cents loss on each box of lemons contained in the cargo.

This average loss is fairly sustained by the evidence. Libelant's witnesses establish it and claimant's witness Richards, who examined the cargo, testified as an expert that "the lemons ran between 20 and 30 per cent. damage; it might have been 20 and 25." Twenty-five per cent. damage of lemons worth $3 per box would amount to 75 cents per box. The damage from phosphate dust may have been slight, but it must be conceded that where it settled on the boxes of lemons it had to be removed before sale. The contention that no allowance was made for normal damages is not sustainable under the evidence.

The decree of the District Court was correct under the facts developed on the evidence, and it is affirmed.