UNIONE AUSTRIACA DI NAVIGAZIONE, OF TRIESTE, AUSTRIA, et al.
v. LEON G. TUJAGUE & CO. et al.

THE GERTY.

(Circuit Court of Appeals, Fifth Circuit. March 10, 1916.)

No. 2853.

1. SHIPPING ⬦⟹127—DAMAGE TO CARGO—LIABILITY OF VESSEL.
    A steamship with a cargo of lemons from Italy to New Orleans, stopping at Havana to discharge some cargo, submitted to fumigation by the

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quarantine officers of the United States, by which the lemons were injured. She could have avoided the necessity of fumigation by discharging with lighters or at a rat-proof wharf, which her Havana agent knew. or she could have proceeded and submitted to fumigation at New Orleans, either before or after discharging. *Held*, on the evidence, that the master had reason to and did in fact apprehend danger of injury to the cargo, and that it was negligence on his part not to protect it by one of the means open to him, which rendered the ship liable for the damage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 465, 466; Dec. Dig. ☞127.]

2. SHIPPING ☞142—DAMAGE TO CARGO—NOTICE OF CLAIM.

A provision in bills of lading requiring notice of any claim for damage to cargo before removal of the goods, construed as meaning before removal from the wharf, is reasonable and enforceable, where the consignee had knowledge of the damage before such removal. .

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 496; Dec. Dig. ☞142.]

Appeal from District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by Leon G. Tujague & Co. and others against the steamship Gerty; Unione Austriaca di Navigazione of Trieste, Austria, claimant. Decree for libelants, and claimant appeals. Modified and affirmed.

The appellees, Leon G. Tujague & Co., libeled the steamship Gerty, alleging damage to a consignment of lemons shipped from Palermo to New Orleans on that steamship, caused by fumigation of the ship at Havana by the quarantine authorities of the United States. The other appellees intervened with like claims against the ship for damage to other consignments of lemons alleged to have been due to the same cause. The appellant, through the master of the Gerty, filed a claim to the ship. The court below rendered a decree in favor of the libelant and each of the interveners for differing amounts, assessed as the damage to each shipment, by the special master, to whom the matter was referred, and from this decree the claimants of the ship have taken this appeal.

George Denegre, Victor Leovy, and Henry H. Chaffe, all of New Orleans, La., for appellant.

William Grant and William B. Grant, both of New Orleans, La., for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1] The appellant denies liability for the damage alleged to have been done the lemons upon two grounds. It contends that the fumigation alleged to have caused the injury was done by public authority and under compulsion, and that it was not known at the time the master submitted to fumigation that injury to the lemons would probably result therefrom, and that such injury could not have been reasonably apprehended by the master, and, as negligence was essential to libelants' right of recovery, there could be none where injury to the lemons could not have been reasonably apprehended by the master from the fumigation.

It is clear that, if the ship submitted to fumigation because of a

paramount public authority commanding it and was guilty of no negligence, there would be no liability. As the ship had cargo for the port of Havana, it cannot be said to have been guilty of negligence in stopping there to discharge cargo. Austrian Union S. S. Co. v. Calafiore, 194 Fed. 377, 114 C. C. A. 295. It is in evidence that if the ship had discharged her cargo from the Havana harbor in lighters, or from a rat-proof wharf, no fumigation would have been required by the quarantine officers. It is also clear that the only result of the ship's not submitting to fumigation at Havana was that she be fumigated on her arrival in New Orleans, either before or after discharging cargo. Under these circumstances, the principle of immunity to a carrier for injury done by paramount public authority has no application.

The government quarantine officials in Havana had no extraterritorial jurisdiction to enforce fumigation. The only penalty they could exact of the ship was the necessity of submitting to it in New Orleans, if not administered in Havana. Even this penalty could have been avoided by discharging the cargo from the harbor at Havana or at a rat-proof wharf. Under these conditions, if injury to the cargo was so probable a result of fumigation as to make the submitting to it by the master negligence, the ship would be liable for any injury to the cargo thereby caused. Submission under such circumstances would be voluntary and not compelled by paramount public authority. The question resolves itself into the inquiry as to whether the master should have reasonably apprehended injury to the lemons from fumigation when he submitted his ship to it. The appellant's agents in Havana had notice before the ship's arrival of the quarantine regulations, and of the necessity for discharging from the harbor or at a rat-proof wharf, in order to escape the necessity of fumigation either at Havana or at New Orleans.

The evidence is in conflict as to whether the condition of the lemons, as testified to, upon arrival in New Orleans, was due to the fumigation at Havana. We think it reasonably appears that fumigation was the cause, in view of the undisputed evidence that they were received by the ship at Palermo in good condition, and would have withstood the voyage without impairment of condition in the absence of unusual treatment on the ship, and the absence of any showing of anything unusual on the voyage except the fumigation.

The appellant contends that the injurious effect of fumigation on lemons, if it existed, was unknown prior to the incident in Havana, both to scientists and seafaring men, and that the master of the Gerty was not negligent in failing to foresee such likelihood of injury when he submitted the ship to fumigation. The history of fumigation, in its effects on fruit, is a disputed question as shown by the record. In the absence of any evidence as to the master's state of mind with reference to this subject, we might be in doubt as to whether to attribute negligence to him in failing to anticipate injury. The record, however, shows that upon his arrival in Havana, and upon his being informed of the necessity of fumigation, he protested and upon the ground of probable injury to his cargo of lemons. It is true the evidence shows that the Havana quarantine officer reassured him; but

the officer admits he had no information other than absence of complaints against previous fumigation of fruit cargoes brought to his notice.

We think the record shows that the master of the Gerty did, in fact, apprehend danger of injury to his cargo from fumigation. It then became his duty to protect his cargo against such injury. If it was then too late for him to have escaped fumigation, by discharging from the harbor in Havana or at a rat-proof wharf there, he still had it in his power to decline fumigation at Havana altogether, and submit to it only upon his arrival in New Orleans, where the period between fumigation and discharge of his cargo would have been less, if he was required to fumigate before discharging his cargo. Upon his next trip, he pursued this course, and was permitted to discharge his cargo in New Orleans before being fumigated. The agents of the ship at Havana should have notified the master of the quarantine requirements before he tied to the wharf, and in time to have enabled him to escape fumigation. We think the record sustains the District Judge in his conclusion that the ship was liable for the damage to the lemons.

[2] The bill of lading contains a stipulation that the ship should not be liable "for any claim of which notice is not given before removal of the goods." The reasonableness of such a stipulation has been sustained, upon a construction that by "removal" is intended removal from the dock, in the cases of The Persiana, 185 Fed. 396, 107 C. C. A. 416, The Westminster, 127 Fed. 680, 62 C. C. A. 406, and The St. Hubert, 107 Fed. 727, 46 C. C. A. 603, by the Courts of Appeal of the Second and Third Circuits. In the last two cases writs of certiorari were denied by the Supreme Court. The case of The Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419, does not conflict with those cited, but makes the reasonableness of the stipulation depend upon the particular facts of each case. In this case, it is clear the libelants and interveners were fully aware of the damage and its approximate extent before any of the lemons were removed from the dock, since their damages are predicated upon the reduced prices obtained for the lemons at a public sale at which they were present, had while the lemons were at the dock. They were unloaded from the ship not later than January 29th. Notice was first given on January 31st. Some of the lemons were removed by the purchasers from the dock on January 29th, and some on January 30th. No notice of claim had been served on the ship up to January 31st. In view of the knowledge on the part of the consignees of the condition of the lemons before their removal from the dock, we think the stipulation as to notice was reasonable as to them, and should be enforced, as to all lemons, which had been removed from the dock, prior to January 31st, when the notice was given.

Criticism is made of the character of proof submitted by the libelants and interveners as to the market price of lemons when those on the Gerty were sold. There is some evidence offered by the libelants and interveners as to the market price, and what there is is not contradicted. We therefore assume the figures of the master as the basis of assessment of the damage on each box, reducing the decree in favor

of each libelant and intervener by the amount of the damages, assessed on this basis, which the master's report shows were removed from the dock prior to January 31st, the date of the notice of the claim. This would result in a decree in favor of Leon G. Tujague & Co., the libelants, in the sum of $1,758.90; in favor of J. Cusimano in the sum of $1,778.40; in favor of Salvatore Calafiore in the sum of $678.60; in favor of G. Cuccia in the sum of $1,699.10; in favor of the New Orleans Fruit Importing Company in the sum of $169; and in favor of Benedetto Intravaja for $114.66. The costs of appeal are taxed against the appellees.

As so modified, the decree of the District Court is affirmed.