### THE VERDI.

#### (Circuit Court of Appeals, Second Circuit. April 3, 1922.)

#### No. 279.

1. **Shipping ⊜142—Provision of bill of lading for written claim for damages within seven days held applicable to claim for damages caused by negligent stowage.**

   Under bill of lading requiring written claim "for short delivery of or damage to property hereby receipted for" within seven days after ship has finished discharging, and "any other claim or demand hereunder, or for or in respect to said property or the care, carriage, delivery, or disposition thereof," in writing "within 60 days from the date hereof," a claim for damage to the goods because of negligent stowage should have been made within seven days after the ship had finished discharging.

2. **Shipping ⊜142—Letter held not waiver of right to written claim for damages required by bill of lading.**

   Letter from ship's agents to shipper's agent, describing packages claimed by shipper to have been damaged, and stating that damaged packages should be revised by surveyor of insurance, *held* not a waiver of the shipowner's right to written claim required by bill of lading.

3. **Shipping ⊜142—Shipper's failure to give written notice of claim within required time held to preclude recovery for damage to goods.**

   Shipper's failure to give written notice of claim within time specified by the bill of lading *held* to preclude recovery for damage to goods.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Hart & Hegeman Manufacturing Company against the steamship Verdi, her engines, etc., claimed by the Liverpool, Brazil & River Plate Steam Navigation Company, Limited. Decree of dismissal, and libelant appeals. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and Randolph Harris, both of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (John L. Galey, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. In view of the ample statement of facts clearly set forth in the opinion of Judge Knox (noted in the margin),[1]

---

[1] See note at end of case.

we shall confine our discussion to three questions of law urged by libelant. Libelant shipped on the Verdi from New York to Buenos Aires cases of electrical switches and appurtenances, which were stowed with potatoes. The potatoes decomposed, and the resultant fluid damaged libelant's shipment, so as to make it worthless, and the District Court held that libelant would have been entitled to recover, but for its failure to give the notice required by clause 11 of the bills of lading.

[1] 1. Clause 11 read as follows:

"Also that carrier, ship, or representative shall not be liable, for negligence or otherwise, as carrier, bailee, or otherwise, for any claim or demand for short delivery of, or damage to, the property hereby receipted for, unless presented in writing, within 7 days after the ship has finished discharging, to the master of the ship or the ship's agents, at port of discharge; nor for any other claim or demand hereunder or for or in respect to the said property, or the care, carriage, delivery or disposition thereof, unless presented in writing to the carriers, or to their agent at port of shipment or discharge, within 60 days from date hereof."

Written notice of libelant's claim was given on October 29, 1915, which was more than 7 days after the ship had been discharged, and less than 60 days from the issuance dates of the bills of lading. The part of the clause preceding the semicolon is in familiar form and entirely clear. The second part might have been more aptly worded, but, at the outset, it refers to any "other" claim or demand, indicating plainly a claim or demand different from that to be made under the 7-day notice section such, perhaps, as misdelivery or delayed delivery. "Damage" to the property "hereby receipted for" plainly refers to claims of which that at bar is typical.

[2] 2. Waiver. After receiving libelant's demand of October 29, 1915, Boadle, Wallace & Co., the ship's agents at Buenos Aires, under date of November 2, 1915, wrote Pope, libelant's agent:

"We are in receipt of your letter of the 29th ult., and beg to advise you that, in consequence of various packages having been damaged in No. 2 hold, the following marks mentioned by you have been included in extension of protest which can be seen at the Escribania de Marina, Santiago Peso, Calle 25 de Mayo, 194: [Here follows the description.] For all the other packages we have clear receipts, having been delivered in good condition. Any damaged packages should therefore be revised by the surveyor of your insurance."

Laying aside the question of the authority of the ship's agents to bind the ship or appellee, it must be apparent that the letter by its terms in no manner gave up the right to insist upon the condition precedent of notice. There was no acknowledgment of liability, but merely an ordinary business procedure, not waiving any rights. The Westminster, 127 Fed. 680, 62 C. C. A. 406; The Persiana, 185 Fed. 396, 107 C. C. A. 416; The San Guglielmo, 249 Fed. 588, 161 C. C. A. 514.

[3] 3. The failure to give the notice of claim in time defeats libelant's claim, under the authority of the cases cited supra and Unione Austriaca v. Leon G., 231 Fed. 427, 145 C. C. A. 421. We are now asked to disregard the decisions of our own courts. The question when heretofore presented was one concerning which there was a difference of opinion, as evidenced by dissents in the Parsiana and San

Guglielmo Cases. But we regard the question as now settled, so far as this court is concerned, and hence ruled by the cases above mentioned.

Decree affirmed, with costs.

NOTE.—The opinion of Knox, District Judge, referred to above, is as follows:

KNOX, District Judge. Libelant in September, 1915, shipped in the steamship Verdi, from New York to Buenos Aires, 76 cases of electrical switches and appurtenances. Bills of lading issued upon the shipment indicated the goods to have been received in good order and condition and provided for their delivery at destination in like order. The shipment was stowed in lower No. 2 hold of the Verdi with a quantity of potatoes in barrels and crates. On the trip south "the potatoes," to use the master's description, "went bad." Libelant's shipment was in part so damaged by the fluids arising from the decomposition of the potatoes as to be rendered worthless. Recovery for the damage sustained is now sought from the Verdi upon the ground that the ship was defective and unseaworthy, and that there was negligence in the loading, stowage, custody, and care of the cargo.

The claimant, after interposing a general denial of fault, pleads as a defense paragraph 2 of the bill of lading, the salient portion of which, as to the present suit, is as follows: "* * * Said line shall not be liable for loss or damage before, after, or during loading or discharging, occasioned by causes ·beyond the carrier's control, * * * any latent or other defects in hull, machinery, or appurtenances or unseaworthiness of any kind, * * * but not discoverable by the exercise of due diligence, * * * by heating, shrinkage, effects of climate, * * * decay, putrefaction, * * * sweat, change of character, drainage, leakage, * * * nor for any loss or damage from stowage or contact with or taint from other goods, as all vessels of this line carry general merchandise." Claimant, asserting the exercise of due diligence and proper stowage, defends that the damage was due to causes and perils excepted by the bills of lading and the Harter Act (Comp. St. §§ 8029–8035).

As another defense claimant sets up paragraph II of the bill of lading, which provides that the carrier "shall not be liable for negligence or otherwise," unless the claim for damage be "presented in writing, within 7 days after the ship has finished discharging, to the master or * * * the ship's agents, at port of discharge; nor for any other claim or demand * * * for or in respect to the property, or the care, carriage, delivery or disposition thereof, unless presented in writing to carriers, or to their agents at port of shipment or discharge, within 60 days from date hereof." It is said upon behalf of the ship that no claim was made in writing to the master of the ship or ship's agents within the period of 7 days. The bill of lading further provided that the carrier should have the benefit of any insurance upon the goods, and it is set up as a defense that no tender of such benefit has been made to claimant. This defense, set up in the answer, based on this provision, was withdrawn at the trial.

As a partial defense claimant further pleads that the bill of lading contained a clause to the effect that in computing liability of the carrier the latter should not be responsible for goods exceeding $100 per package, unless declared with value in bill of lading, and extra freight as agreed upon and paid.

Much testimony has been taken as to the ideal character of lower No. 2 hold for the storage of potatoes. It was equipped with ventilators, and between the cargo of potatoes and the next deck there were some six or seven inches of air space. What happened to the potatoes in this hold, however, indicates that something was seriously wrong. Never before had the Verdi carried potatoes in that hold, and, save upon this occasion, they never again were carried there. Furthermore, out of several consignments of potatoes transported upon the voyage in question, those stowed on top of libelant's electrical machinery were the only ones that went bad.

Some of the potatoes were in crates; others in barrels. The former reached their destination in better condition than the latter, which were wholly bad.

Potatoes are a heating cargo, and must be subject to plenty of air circulation if decomposition is to be avoided. It is manifest, I think, that potatoes in barrels, even if the barrels be provided with slits, will ·be more likely to decompose than if carried in crates. When, therefore, potatoes in barrels are placed in the bottom of a ship, where in the nature of things there will be a minimum of air circulation, and on top of electrical appliances, it seems to me that a case of negligent stowage of the latter is made out. It was to have been anticipated that the potatoes, which at best will be subject to some decomposition, would drain their fluids onto and through the cases of machinery to the machinery itself and cause damage thereto.

Libelant is entitled to a decree, unless a recovery is avoided by terms of the bill of lading. I am of opinion that the present case does not come within the provision of the bill of lading first hereinbefore quoted. The nonliability of the ship by reason of decay, putrefaction, drainage, etc., may not be taken advantage of when the ship negligently stows the damaged cargo. Mainwaring v. Bark Carrie Delap (D. C.) 1 Fed. 874.

I come now to the failure of libelant to present in writing its claims for damage to the ship's master or agents at port of discharge within 7 days after the ship has finished discharging. The steamer reached Buenos Aires upon October 14, 1915, and written notice of libelant's damage was first given to the agents of the Verdi at Buenos Aires upon October 29, 1915. This notice was for the purpose of having the same included in the insurance protest. There is some evidence that the ship's captain and its agents were aware of the damage to the machinery within 7 days from the steamer's discharge. The decayed condition of the potatoes was known to the ship's officers even before the vessel reached her destination, and upon discharge there was a seepage upon the bottom of the hold to a depth of 12 inches. The captain also admits he knew the cases containing the machinery to have been badly stained from seepage, but asserts himself not to have known of the damage done to the contents of the cases.

I am of opinion that such knowledge as was possessed by the steamer's master and her agents was insufficient to constitute a waiver of the notice of claim which the bill of lading provided should be presented. The ship was entitled, not only to notice of damage, but of claim of liability as well. Such provisions are legal, and, while the same are to be given a reasonable interpretation (Jamison v. New York & P. R. S. S. Co. [D. C.] 241 Fed. 389), there are no facts here to take the case without the stipulated terms of the bill of lading. The agent of libelant at Buenos Aires gives no explanation as to why the presentation of a claim in writing was delayed beyond the seven days, and so far as the record shows he was aware of the damage to the goods within such time.

It follows that the libel must be dismissed.