BRENNAN PACKING CO. v. COSMOPOLITAN SHIPPING CO. et al.

(District Court, N. D. Illinois, E. D. August 24, 1925.)

No. 33840.

1. Shipping ⬥142.

Libelant's failure to give carrier notice of damage claim within time stipulated by bill of lading, after notice that voyage had been abandoned because of striking mine, held to bar recovery.

2. Shipping ⬥142.

Clauses in bill of lading limiting time for giving notice and bringing action for loss held not against public policy.

3. Shipping ⬥106.

Incorporation by reference of terms of ocean bill of lading makes them part of contract of affreightment.

4. Shipping ⬥132(3).

Libelant has burden of proving notice of claim for damage to shipment and bringing of suit within stipulated time, as condition precedent to recovery.

In Admiralty. Two libels by the Brennan Packing Company against the Cosmopolitan Shipping Company and others were heard as one case. Libels dismissed.

Charles E. Kremer, of Chicago, Ill., for libelant.

Warren, Cady, Hill & Hamblen, of Detroit, Mich., for respondents.

CARPENTER, District Judge. The Brennan Packing Company, of Chicago, Ill., filed its libel against the Cosmopolitan Shipping Company, Baldwin Shipping Company, the National Dispatch, Great Eastern Lines, and the Grand Trunk Railroad, as respondents, seeking to recover a sum of $5,924.83, on account of damages claimed to have been sustained on shipments of pork products from Chicago to Rotterdam, Holland, on the steamship Englewood, from New York, in July, 1919.

A companion suit is pending in this district (case No. 33811) in which the Cosmopolitan Shipping Company, the Baldwin Shipping Company, and the Erie Railroad are respondents.

At the hearing of this case, by agreement of the parties, both libels were dismissed as to the railroad companies and the Baldwin Shipping Company, leaving the Cosmopolitan Shipping Company the sole respondent. It was further agreed that the two cases might be heard as one, upon the same testimony and depositions filed, and a final order entered settling both.

Early in the month of June, 1919, libelant requested the Baldwin Shipping Company to engage freight room aboard ship for two cars of packing house products destined to Rotterdam, Holland. The Baldwin Shipping Company, acting for libelant, entered into a freight contract with the Cosmopolitan Shipping Company, engaging accommodations desired by libelant.

The steamer Englewood was a Shipping Board vessel, and libelant has not questioned its seaworthiness.

On July 10, 1919, libelant shipped one car of its pork products to New York over the Grand Trunk Railroad, and on the following day shipped the second car over the Erie Railroad. The Grand Trunk Railroad issued one export bill of lading, and the Erie Railroad issued two. All three bills of lading contained two parts, one relating to the carriage by land from Chicago to New York, the other to the carriage by water from New York to Rotterdam.

In paragraph 18 of part II of the bill of lading issued by the railroads it is provided:

"That the property covered by this bill of lading is subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company at time of shipment, and to all local rules and regulations at port of destination not expressly provided for by the clauses herein."

Stamped on the face of the railroad bills of lading by rubber stamp was the following:

"That the property covered by this bill of lading is subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company at time of shipment, including the special war clauses which are also shown on steamer's freight

contracts, and to all local rules and regulations at port of destination, not expressly provided by clauses herein."

The ocean bill of lading contained, among other things, the following agreement by the parties:

"25. * * * Neither the carrier nor its property shall be liable for any claim whatsoever unless written notice thereof shall be given to the carrier, with a statement of particulars, before removal of the goods, or the portion thereof delivered, or in case of nondelivery of the entire consignment within ten (10) days of the final discharge of the vessel or loss or damage thereto, preventing such discharge. No suit to recover for loss or damage shall in any event be maintainable against the carrier unless instituted within three (3) months after the giving of written notice as above provided. No agent or employee shall have authority to waive any of the requirements of this clause: * * * *"

Libelant's shipments were loaded under the inspection of the board of underwriters at the port of New York, in conformity with their rules and according to the ship's manifest.

On July 29, 1919, the steamship Englewood departed from New York on her voyage. All went well until about 6:05 a. m. of August 13th, when the vessel, while proceeding in the North Sea in charge of duly licensed Trinity House Pilot, and about one mile from No. 2 Black Deep buoy, struck a floating mine (an aftermath of the great war). The ship was struck on the port side in the way of No. 1 hold.

It is unnecessary to discuss the evidence as to how the Englewood limped into London with the aid of tugs standing by as a result of wireless messages. The evidence was conclusive as to the impossibility of the steamer continuing her voyage to Rotterdam, and I assume the necessity of her putting into London as a port of refuge.

A survey of the steamer's damage was made at London, and it was decided it was not even fit, with temporary repairs, to complete her voyage to Rotterdam. It was determined, therefore, by the owners of the steamer that the voyage would be abandoned at London, and the owners or consignees of the cargo were to be notified and advised that it would be discharged in craft and landed at London at the expense of the owners, and would be delivered to them upon presenting a bill of lading. The unloading commenced on the 18th of August and continued until the 19th of September.

On behalf of the libelant, Worms & Co., of Rotterdam, who were to have been the agents of the steamer upon her arrival there, were, on or about August 23, 1919, notified and requested to take charge of the cargo.

On August 23d H. Clarkson & Co., Limited, the London representative of the vessel, served notice on the consignee that the voyage was abandoned and that the cargo would be discharged into craft on landing at the expense of its owners, and that delivery would be made upon presentation of bills of lading, and signature of an average bond in the usual form.

On August 28th Van der Hoeven Bros., who were named in the bills of lading as the parties to be notified relative to the Brennan shipment, requested of Worms & Co. information as to their parcels aboard the Englewood. Worms & Co. replied on August 30th, including a copy of notice of the abandonment of the voyage forwarded by Clarkson & Co., Limited.

On August 30th Worms & Co. cabled Clarkson & Co., Limited, to forward forms of Lloyd's Average Agreement, which was done. Hearing nothing further, Clarkson & Co., Limited, on September 10th cabled Worms & Co. asking immediate instructions. Worms & Co. replied on September 11th as follows: "Stop shipment Brennan Packing Company Chicago Will approach you, stop."

It was not, however, until nearly a month later, on October 8, 1919, that any one approached Clarkson & Co., Limited, relative to the Brennan shipment. On that day Mr. Herrick, vice president of libelant, arrived in London, made the general average deposit, and signed the general average bond. The consignment was then released to Messrs. Kaye Son & Co., Limited, who arranged on behalf of the Brennan Packing Company to forward it to Rotterdam.

In addition to the notice of the abandonment of the voyage served by Worms & Co. on Van der Hoeven Bros. on August 30, 1919, a similar one was served direct upon the Brennan Packing Company at Chicago, Ill., on August 25, 1919, by the Cosmopolitan Shipping Company. The notice was as follows:

"S. S. Englewood. Voyage 4 New York to Rotterdam struck floating mine—Put into Gravesend in distress.

"The above vessel, after striking a floating mine in the North Sea, was forced to call for assistance and put into a port of refuge in distress.

"In consequence of this, expenses of a general average nature have been and will be

incurred, and must be contributed to by the vessel, cargo, and freight.

"In view of this, we have appointed Messrs. Marsh & McLennan (Marine) 80 Maiden Lane, New York City, as adjusters in the case, and suggest that you communicate with them regarding average security, which of course must be furnished before the cargo can be released.

"The United States Shipping Board representative at London has cabled that he has notified our agents at Rotterdam that the voyage will be abandoned at Gravesend, and that they are willing to place available tonnage at the cargo interests disposal at current rates, in order that the cargo may be landed at its original port of destination.

"Kindly give this matter your preferred attention and let us have your instructions regarding the disposition of the cargo at your earlist convenience and oblige.

"Very truly yours,
"Cosmopolitan Shipping Co., Inc."

The receipt of this notice was not denied by libelant, and in addition it appears that Herrick, its vice president, was in Europe at the time of the disaster and presumably could have been reached by cable if libelant so wished.

It is unnecessary, as I view the situation, to go into details of the transshipment of the Brennan products to Rotterdam. Suffice it to say that the cargo arrived in Rotterdam some time in November, 1919, and was disposed of during November and December of that year at a loss, as the libelant claims, of $5,924.83, and at a time when Mr. Herrick was fully cognizant of all the facts, knowing the loss sustained, and what was being done by all concerned.

[1] The record, however, fails to show that libelant complied with the provisions of section 25 of the ocean bill of lading relative to serving notice of claim of damage, and clearly respondent did not waive such notice. Suit No. 33811 was not brought in this court until July, 1921. Suit No. 33840 was not filed until the middle of October, 1921.

A number of interesting defenses have been urged by proctors for the respondent, but, in the view which I take of these cases, it is unnecessary to mention but one, namely, the failure of the libelant to comply with the express terms of the railroad and ocean bills of lading with respect to notice of claim for damage and bringing suit.

The freight bills of lading were common in form, also the ocean bill of lading. The undertaking of the libelant in these bills of lading was in plain language and was not to be misunderstood.

[2] The libelant claims that the limitation clauses as to notice and bringing of suit are against public policy. Paragraph 25 from the ocean bill of lading notified the shipper just exactly what had to be done in case of loss or damage. That such clauses in bills of lading are not against public policy has been definitely determined. Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419; The Turret Crown (C. C. A.) 284 F. 439; The San Guglielmo, 249 F. 588, 161 C. C. A. 514; The St. Hubert, 107 F. 727, 46 C. C. A. 603; The Susquehanna (D. C.) 291 F. 698; The Westminster, 127 F. 680, 62 C. C. A. 406; The Verdi (C. C. A.) 282 F. 572; Unione Austriaca, etc., v. Tujague Co. et al., 231 F. 427, 145 C. C. A. 421.

[3] Moreover, the incorporation by reference of the terms of the ocean bill of lading makes them a part of the contract of affreightment. South Atlantic S. S. Line v. London, Savannah, etc., Co., 255 F. 306, 166 C. C. A. 476.

[4] I am of the opinion not only that the provision for notice of claim and bringing of suit for damages was reasonable and not against public policy, but also that the libelant carried the burden of proving compliance therewith as a condition precedent to recovery. The Sagadahoc (D. C.) 291 F. 920. Notwithstanding this burden, libelant has neither complied with the provisions of the bills of lading, nor attempted in any way to excuse its failure so to do.

To follow the reasoning in The Queen of the Pacific Case, supra, this case is not one of a shipment to a far distant point where the shipper was not represented and was without opportunity to ascertain the fact of damage. The libelant was notified of the disaster on August 25, 1919. The Rotterdam representatives of the libelants were notified on August 30, 1919, to the same effect. The vice president of the libelant was in Europe at the time. Notwithstanding these facts, the record fails to disclose that any one representing the respondent was ever served with notice of any kind of claim of damage by libelant or its agents, and not until almost two years after its vice president, Mr. Herrick, returned to Chicago was suit brought.

The steamship company maintained offices in this country, and it was advised promptly of the Englewood's predicament. On August 25, 1919, the libelant was notified of the situation, and knew that the respondent had abandoned the voyage. Starting time from this last date, the limitation clauses as

to notice and suit were certainly effective and binding.

It seems plain to the court that, as a result of the failure of the libelant to file claim, as provided in the bills of lading, and the failure to bring suit for nearly two years after the loss, the respondent carrier was deprived of the opportunity to examine the goods at Rotterdam, and the holding of a survey on its own account.

My view of this case is against the libelant, for failure to give notice and bring suit, as provided by the bills of lading. It is therefore unnecessary to discuss the many other and very interesting defenses urged by the respondents.

I am of the opinion that the libels must be dismissed, and an order may be prepared accordingly.