## THE NATAL.[*]

### DAMPSKIBS AKTIESELSK ORIENT v. W. R. GRACE & CO.

(Circuit Court of Appeals, Ninth Circuit. August 2, 1926.)

No. 4800.

1. Shipping ⬤⟲142.

Mere knowledge by carrier at time of delivery that there is shortage in cargo does not meet requirement that claim for short delivery should be presented in writing within three days.

2. Shipping ⬤⟲142.

Stipulation in bill of lading that claim for loss or damages must be presented within three days after discharge of cargo *held* valid, if reasonable.

*Rehearing denied October 4, 1926.

3. Shipping ⬤⟲142—Compliance with provision of bill of lading that claim for short delivery be made within three days after discharge of cargo held not condition precedent to recovery.

Compliance with provision of bill of lading that claim for short delivery be presented in writing to agents of ship at port of discharge within three days after steamer finished discharging *held* not condition precedent to recovery, where carrier had full knowledge of shortage at time of discharge, and consignor and its vendee did not know thereof.

4. Shipping ⬤⟲142.

Duty to give notice of shortage for loss of goods shipped but not delivered *held* to rest on consignor.

5. Shipping ⬤⟲132(5).

Where bill of lading showed larger shipment than was delivered, evidence *held* insufficient to sustain carrier's burden to show it was erroneous, or that vessel delivered all cargo which she received.

6. Appeal and error ⬤⟲1008(3).

Rule that findings of fact are entitled to great weight on appeal is modified, where they are based wholly on depositions.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Libel by W. R. Grace & Co. against the steamship Natal, claimed by the Dampskibs Aktieselsk Orient. Decree for plaintiff, and the owner appeals. Affirmed.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., and Duncan & Mount, of New York City, for appellant.

Goodfellow, Eells, Moore & Orrick, Hugh Goodfellow, and George Herrington, all of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. From a consignment of 1,779 bundles of iron bars weighing 276,528 kilos, shipped by the appellee from New York to Buenos Aires, Argentina, by the steamship Natal, owned by the appellant, but under a voyage charter to R. P. Houston & Co., 71 bundles weighing 11,035 kilos were missing when the vessel discharged cargo at Buenos Aires, and were never delivered to the consignee. The bill of lading was issued by the charterer. At the time of the discharge, there was no delivery of cargo directly to the consignee, but as many of the iron bars of the consignment as arrived were, according to the rule of the port, discharged into the custom house in charge of the custom house authorities, and were not received by the consignee or his vendee until two or three months thereafter.

The owner of the vessel, the appellant herein, in its answer to the libel, alleged the appellee's failure to comply with the provision in the bill of lading that, in case any claim should be made against the carrier for loss or short delivery, such claim must be presented in writing at the office of the agents of said steamship at the port of discharge "within three days after the steamer shall have finished discharging," and that otherwise the loss should be deemed to be waived, and alleged that neither the libelant nor the consignee nor the holder of the bill of lading presented any claim in writing in accordance with that requirement, and that consequently recovery was barred. The vessel arrived at Buenos Aires September 11, 1917, and finished discharging her cargo September 18, 1917.

[1] We cannot follow the court below in holding that the appellee waived the provision of the bill of lading as to notice of claim. Mere knowledge on the part of the carrier at the time of delivery that there is shortage in the cargo does not meet a requirement that within three days after delivery a claim for short delivery shall be presented in writing. The San Guglielmo, 249 F. 588; The St. Hubert, 107 F. 727, 46 C. C. A. 603; Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543; The General G. W. Goethals (D. C.) 298 F. 933. Nor is there anything to the contrary in our decision in Oelbermann v. Toyo Kisen Kabushiki Kaisha, 3 F.(2d) 5, cited by the appellee.

[2, 3] The validity of a stipulation in a bill of lading that a claim for loss or damage must be presented within as short a time as three days after discharge of cargo, or other stipulated event or time, has been generally recognized. The Westminster, 127 F. 680, 62 C. C. A. 406; The St. Hubert, 107 F. 727, 46 C. C. A. 603; The Persiana, 185 F. 396, 107 C. C. A. 416; Unione Austriaca di Nav. v. Leon G. Tujague & Co., 231 F. 427, 145 C. C. A. 421; Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543. But it is equally well settled that such a provision is not binding unless it is reasonable, and that the question of its reasonableness may largely depend upon the object of the notice, the length of the voyage, the knowledge possessed by the parties, and other circumstances of the case. In Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419, the court said: "It is unnecessary to say that if, under the circumstances of a particular case, the stipulation were unreasonable, or worked a manifest injustice to the libelants, we should not give it effect." In the West Cawthon (D. C.) 281

F. 894, the court said: "A number of the bags of rice were never delivered anywhere. They were lost by the ship, and the contention is made on its behalf that the libelant cannot recover for their value, because it did not put in a claim for them in the time limited within the bill of lading. The fact is, however, that the delivery was never made at the port at which it should have been, and that, before it was ever delivered anywhere, the ship itself, or some one on its behalf, notified the libelant that the bags in question were lost." In The Cardiganshire (D. C.) 9 F.(2d) 416, the court said: "Such conditions of limitation in bills of lading are to be given reasonable and not unvarying effect, dependent upon the facts of the particular case." In The Eldorado, 1923 A. M. C. 430, the court said: "It is also settled that where a consignee is unable in the exercise of due diligence to discover the damage within the time limitation, the clause will have no effect if notice of damage is given promptly." In The Turret Crown (C. C. A.) 284 F. 439, the court, while recognizing the obligation of the bill of lading, said: "Where the character of the damage was such as not to be easily discernible, or where unpacking or inspection was necessary, and this could not be done on the delivery platform of the carrier, such a provision, undoubtedly, would be burdensome, and ought not to be enforced." In Jamison v. New York & P. R. S. S. Co. (D. C.) 241 F. 389, the court, referring to the difficulties attending compliance with the obligation of the bill of lading, and citing the Queen of the Pacific, said, in a case where the clause could not be literally fulfilled: "Under such circumstances it must be given as reasonable and as near an application as the facts warrant." In The Niceto (D. C.) 134 F. 655, it was held that the bill of lading does not preclude a recovery for shortage of cargo, although no claim therefor was made within the specified time after the discharge, where the ship placed the cargo in store, taking receipts therefor, and as soon as the shortage came to the attention of the consignee it presented a claim therefor.

[4] The consignment here in question was to order for account of Enrique Wullf at Buenos Aires. Before delivery, the consignee had sold the iron to Portalis & Co. He received from Portalis & Co. a letter dated February 13, 1918, advising him that, after the discharge of the iron from the custom house, it was found that only 1,708 bundles had arrived, and inclosing a certificate from the carrier showing that fact. He testified that the letter gave him his first information

that the iron had been received, and that he forwarded the letter to the appellee in New York, requesting it to "make the corresponding collection." Vincente Carrao, chief of the unloading department at Buenos Aires, testified that the iron was discharged from the ship into the deposits of the custom house, thereafter to be delivered to the buyer upon the payment of duties; that the custom house did not permit persons outside to inspect or look after stored merchandise in government deposits; that on September 18th the carrier knew of the shortage of 71 bundles, and executed a certificate to that effect. To the interrogatory whether or not a written claim was presented at the office of the carrier or its agents at Buenos Aires within three days after the discharge of the cargo, he answered that no claim was presented within that time, and that the first claim that was presented was that of Portalis & Co. on October 18, 1917, for 71 bundles of bars. Captain Petersen of the steamship Natal, a witness on behalf of the appellant, testified that no claim for shortage was made to him or to the charterer's agents at Buenos Aires, but that such a claim was made against his company in New York about two months after the delivery of the cargo. To this testimony adduced by the appellant we think the presumption should attach that the claim so made was made in writing. For loss of goods shipped but not delivered the duty to give notice of shortage in this case rested upon the consignor. It was the party in interest and by whom the damages, if any, were recoverable. We are not persuaded that it was bound to have on hand at the port of delivery an agent to watch the tally of the discharged cargo as it went into the custom house. At that time the shortage was not known by the consignor or by the consignee or by the latter's vendee. The vendee presented the claim to the charterer's agents one month after the discharge, and presumably as soon as it ascertained the fact, and the consignor presented it to the charterer in New York two months after the discharge. In view of these circumstances, and the fact that the carrier had full information of the shortage and the extent thereof at the time of the discharge, and certified the same, and in view of the nature of the claim which is not for damages or injury to cargo, but for short delivery, we are not prepared to hold that the provision of the bill of lading prescribes a condition precedent, the failure literally to comply with which should defeat recovery, or that the claims which were made were insufficient.

[5, 6] The appellant contends that the steamship delivered all of the appellee's shipment of iron bars, and fulfilled her contract, citing James v. Standard Oil Co. of New York, 191 F. 827, 112 C. C. A. 341, where it was held that the recitals of the bill of lading are not absolutely conclusive, and that the law is well settled that a vessel which delivers all the cargo she has received fulfills her duty. In Scott v. W. R. Grace & Co., 275 F. 340, the same court said: "The rule is well settled, both in this country and in England, that the master of a ship when he issues a bill of lading for goods, must make delivery of all the goods admitted by the bill of lading to have been received. When he signs the bill acknowledging the receipt of a specific quantity of goods, the shipowner is bound to deliver the full amount specified, unless he can show that the whole or some part of it was in fact not shipped." The court below, upon the evidence, found that the appellee shipped iron bars of gross weight 226,528 kilos, and failed to deliver at Buenos Aires 71 bundles of bars weighing 11,035 kilos which the appellee had shipped. The rule that findings of fact are entitled to great weight in an appellate court is modified where, as here, they are based wholly upon depositions. But we do not regard the finding of fact here as depending upon conflicting evidence or the credibility of witnesses. It rather depends upon admitted facts and the conclusions inferable therefrom. The evidence leaves no doubt that the shipment was made as recited in the bill of lading, and it leaves no doubt that there was shortage in the delivery to the consignee, as found by the trial court. When the vessel was seized under the libel herein, and depositions de bene esse were taken, the master and the first officer testified that there were no consignments of iron bars on the vessel other than that made by the appellee. But by the depositions it was shown conclusively that the steamship brought to Buenos Aires three shipments of bar iron consigned to three consignees; that the appellee's shipment was discharged into railway cars to be sent to the custom house deposits; that the shipments to the other two consignees were discharged in lighters alongside the ship; that neither the officers of the vessel nor the charterers made any attempt to check the number of bundles of iron bars delivered to the lighters. Carrao testified that the lighters were under his direction, aided by the tallyman of R. P. Houston & Co., "but not those loaded for account of the consignees, as once the receipts were obtained for the merchandise delivered, I had nothing more to

do with them as long as no doubts existed in the accounts." It is true that he testified that there could have been no mistakes in delivery, for two reasons, first, because the appellee's iron came piled in hold No. 2, and the other shipments of iron were all piled in lower hold No. 1, and, second, because the appellee's iron was very long, from 35 to 45 feet, and the other shipments were from 12 to 17 feet in length. But Olson, the first officer of the ship, called as a witness for the appellant, testified that there were long and short bars in the appellee's shipment; the long bars being from 35 to 40 feet in length, and the short ones from 20 to 25 feet, "as far as I remember." From the testimony it would seem probable that not all of the appellee's shipment was stowed in the hatch No. 2; that a portion of it may have been stowed in hatch No. 1; and that, in any event, there was misdelivery of some of the appellee's shipment to one or both of the consignees of the two other shipments. We are not convinced that the appellant has sustained the burden of proof to show that the bill of lading was erroneous or that the vessel delivered all the cargo she received.

The decree is affirmed.